**Michael V. DiPOMPO, Plaintiff,**

v.

**WEST POINT MILITARY ACADEMY, Chief Administrative Officers of West Point Military Academy, in individual and official capacities, whose names are unknown, George Diaz, in his individual and official capacities, Edward O'Connell, in his individual and official capacities, Michael Heller, in his individual and official capacities, Anthony Ferraiulo, in his individual and official capacities, and Dr. John Francis, in his individual and official capacities, Defendants.**

No. 86 Civ. 4124 (MBM).

United States District Court,
S.D. New York.

March 2, 1989.

Kipp Eliott Watson, New York City, for plaintiff.

James L. Garrity, Asst. U.S. Atty. (Susan P. Johnston, Asst. U.S. Atty., of counsel), New York City, for defendants.

Ronald A. Salvatore, Office of the Staff Judge Advocate, U.S. Military Academy, West Point, N.Y., of counsel to defendants.

## OPINION AND ORDER

MUKASEY, District Judge.

Plaintiff Michael V. DiPompo moves for summary judgment against defendant the United States Military Academy, West Point Military Reserve, sued here as West Point Military Academy (West Point) as to a portion of his employment discrimination suit, and moves to substitute the Secretary of the Army (the Secretary), sued in his official capacity, for defendants the chief administrative officers of West Point, sued in their official and individual capacities. Fed.R.Civ.P. 56(a), 15. Defendants West Point and its chief administrative officers, as well as George Diaz; Edward O'Connell; Michael Heller; Anthony Ferraiuolo, sued here as Anthony Ferraiulo; and Dr. John Francis, sued both as individuals and officials of West Point, move for judgment on the pleadings or summary judgment dismissing the entire complaint, and they also seek sanctions. Fed.R.Civ.P. 12(c), 56(b), 11. For reasons given below, DiPompo's motion for summary judgment is denied; his motion to amend his complaint is granted; defendants' motion for summary judgment or dismissal, as prosecuted by the Secretary, is granted in part and denied in part; and the motion for sanctions is denied.

## I

DiPompo suffers from dyslexia, a handicap that interferes with his ability to read. When DiPompo is calm, he can read about as well as an advanced first grader. However, when DiPompo is under stress, the evidence indicates that he is illiterate. At the time of the alleged discrimination, DiPompo was a mason's helper at West Point, and a volunteer fire fighter in the Beacon, New York, Fire Department.

In September 1980 and June 1982, DiPompo applied to work as a fire fighter at West Point. Both his applications were rejected. In January 1984, DiPompo asked to be temporarily transferred to a summer fire fighter's position. DiPompo's request was denied. In May, 1984, DiPompo attempted informal mediation with the help of West Point's Equal Employment Opportunity (EEO) Office. When the mediation efforts failed, on June 20, 1984, DiPompo filed an EEO complaint alleging that West Point's decision not to transfer him temporarily was illegally based on his handicap.

In September 1984, while his earlier claim was being investigated, DiPompo applied to become a structural fire fighter. As part of his application, DiPompo took a physical examination and was required to read from fire fighters' manuals. As defendants would later explain, fire fighters at West Point must be able to read at a 12th grade level in order to be accepted. After he failed his examination, DiPompo was rejected.

On January 22, 1985, DiPompo filed a second EEO complaint, asserting that West Point's failure to hire him as a structural fire fighter was illegally based on his handicap. That complaint was amended on February 7, 1985.

On April 26, 1986, DiPompo received the Army's determination that he was not temporarily transferred to the fire fighting unit for reasons unrelated to his handicap. That determination also informed him of his right to sue. On May 23, 1986, he filed the present action.

Approximately seven weeks later, on July 7, 1986, the Army determined that there was no merit to DiPompo's second claim of hiring discrimination, and issued him another right-to-sue letter. On August 5, 1986, on the 29th day after that letter was issued, DiPompo served the Attorney General of the United States with a copy of his verified complaint.

In his complaint, DiPompo seeks declaratory, injunctive, and monetary relief from all defendants for violations of 42 U.S.C. § 1985(3) (1982), and §§ 501 and 504 of the Rehabilitation Act of 1973 (the Rehabilita-

tion Act), 29 U.S.C. §§ 791 and 794 (1982 & Supps. II 1984, III 1985, IV 1986) respectively. In addition, DiPompo seeks identical relief from West Point for violation of § 503 of the Rehabilitation Act, 29 U.S.C. § 793 (1982), and the New York Human Rights Law, N.Y.Exec.Law § 296(1)(a) (McKinney 1982). Moreover, DiPompo seeks relief from the individual defendants for the intentional infliction of emotional distress, and for aiding and abetting West Point to violate the New York Human Rights Law. N.Y.Exec. Law § 296(6) (McKinney 1982).

## II

DiPompo acknowledges that he erroneously sued the chief administrative officers of West Point, and he seeks to replace them with the Secretary, who would be sued only in his official capacity. Fed.R. Civ.P. 15(a). In consonance with the principle that a party should be allowed to amend his pleadings once "as a matter of course," that request is granted. *See Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); *Staggers v. Otto Gerdau Co.*, 359 F.2d 292, 296 (2d Cir.1966); 3 J. Moore, J. Lucas, H. Fink, D. Weckstein & J. Wicker, *Moore's Federal Practice* ¶ 15.10 (2d ed. 1988). However, because some of DiPompo's claims against the Secretary are time-barred, granting DiPompo's motion does not mean that the Secretary now can be sued on each of DiPompo's claims against the chief administrative officers of West Point.

■ The general rule is that a plaintiff cannot sue a new defendant after the statute of limitations has expired as to that defendant. *See Schiavone v. Fortune*, 477 U.S. 21, 25–32, 106 S.Ct. 2379, 2382–2386, 91 L.Ed.2d 18 (1986). In this case, the statute of limitations on each of DiPompo's claims of discrimination runs for 30 days after DiPompo receives a right-to-sue letter from the Army. 42 U.S.C. § 2000e–16(c) (1982). Therefore, if DiPompo now attempted to commence a suit against the Secretary, his claims would be barred. However, claims arising out of one of DiPompo's EEO complaints meet a narrow

exception to this general rule, and therefore, those claims survive, and relate back to the date of the original complaint. Fed. R.Civ.P. 15(c).

The exception to the general rule was most recently articulated in *Fortune*. In essence, *Fortune* permits a plaintiff to sue a new defendant on a claim in the original complaint, but only when that defendant was notified of the claim before the statute of limitations expired. 477 U.S. at 29, 106 S.Ct. at 2384.

■ In this case, DiPompo gave notice of this suit to the Attorney General of the United States, who is the Secretary's agent for service of process, on August 5, 1986. Fed.R.Civ.P. 15(c). Serving the Attorney General notifies the Secretary that a claim is being made against him, and that "but for a mistake concerning identity, the action would have been brought against [him.]" *Fortune*, 477 U.S. at 29, 106 S.Ct. at 2384. Therefore, even if DiPompo did not name the Secretary as a defendant until much later, the date that the Attorney General received a copy of the complaint is the date that the Secretary is deemed to have been served with the complaint.

DiPompo received notice of a right to sue on his first claim of employment discrimination on April 26, 1986, over nine weeks before the Attorney General was served. Therefore, DiPompo did not notify the Secretary of his suit on the first EEO complaint until well after the allotted 30 days had passed. Accordingly, any claims based on that first EEO complaint cannot be prosecuted against the Secretary. In the terminology of Fed.R.Civ.P. 15, DiPompo's claim against the Secretary under his first EEO complaint will not relate back to the date his complaint was filed.

In contrast to the claims raised in the first EEO complaint, DiPompo's claims of employment discrimination based on his second EEO complaint may be brought against the Secretary because DiPompo can show that the Attorney General was served within 30 days of the second right-to-sue letter. *Fortune*, 477 U.S. at 29, 106 S.Ct. at 2384. Therefore, DiPompo may pursue against the Secretary only the

claims contained in his second EEO complaint, filed on January 22, 1985, and amended on February 7, 1985.

### III

■ As a federal employee suing the federal government for employment discrimination, DiPompo cannot pursue many of the claims he presses. In 1972, Congress added § 717 to the Civil Rights Act of 1964. Equal Employment Opportunity Act of 1972, Pub.L. No. 92–261, § 11, 86 Stat. 103, 111 (1972), *codified as amended at* 42 U.S.C. § 2000e–16 (1982). Section 717 provides federal employees the full range of administrative and judicial remedies for employment discrimination, and in return requires that the administrative remedies of Title VII be exhausted before a federal employee sues the government in federal court. By enacting § 717, Congress made Title VII the exclusive remedy for federal employees alleging employment discrimination. *Brown v. General Servs. Admin.*, 425 U.S. 820, 835, 96 S.Ct. 1961, 1969, 48 L.Ed.2d 402 (1976). As *Brown* explains, "[t]he balance, completeness, and structural integrity of § 717 are inconsistent with the ... contention that the judicial remedy afforded by § 717(c) was designed merely to supplement other putative judicial relief." 425 U.S. at 832, 96 S.Ct. at 1967. *Brown* goes on to explain that if an identical claim of employment discrimination against the government could be pursued through the less exacting procedural restrictions of other statutes, then

> by perverse operation of a type of Gresham's law, § 717, with its rigorous administrative exhaustion requirements and time limitations, would be driven out of currency...: The crucial administrative role that each agency ... was given by Congress in the eradication of employment discrimination would be eliminated "by the simple expedient of putting a different label on [the] pleadings."

425 U.S. at 833, 96 S.Ct. at 1968 (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 489–90, 93 S.Ct. 1827, 1836–37, 36 L.Ed.2d 439 (1973)). In addition, as the Court points out, pre-emption of all other statutory remedies for employment discrimination is mandated by the policies of sovereign immunity, which require a waiver of that immunity to be read as narrowly as possible. 425 U.S. at 833, 96 S.Ct. at 1968, *see United States v. Kubrick*, 444 U.S. 111, 117–18, 100 S.Ct. 352, 356–57, 62 L.Ed.2d 259 (1979); *Keene Corp. v. United States*, 700 F.2d 836, 841 (2d Cir.), *cert. denied*, 464 U.S. 864, 104 S.Ct. 195, 78 L.Ed.2d 171 (1983).

■ DiPompo seeks to do precisely what *Brown* prohibits. DiPompo's claim of employment discrimination based on handicap arises only under § 501 of the Rehabilitation Act, a provision that effectively has been incorporated into Title VII by § 505 of the Rehabilitation Act. See 29 U.S.C. §§ 791, 794a (1982 & Supps. II 1984, III 1985, IV 1986). Nevertheless, DiPompo seeks to pursue his claim through other substantive statutes, namely 42 U.S.C. § 1985(3), §§ 503 and 504 of the Rehabilitation Act, New York state law, and New York common law. Therefore, DiPompo's claims under statutes other than § 501 of the Rehabilitation Act cannot be sustained. Accordingly, DiPompo's first, third, fourth, and fifth claims against the individual defendants, sued in their official capacities, alleging respectively violations of 42 U.S.C. § 1985, §§ 503 and 504 of the Rehabilitation Act, and § 296 of the New York Executive Law, will be dismissed.

In an attempt to avoid dismissal of all his claims except the one based on § 501, DiPompo argues that he should be permitted to maintain his action under both §§ 501 and 504 of the Rehabilitation Act. DiPompo argues that § 501 was not intended to be the sole remedy available to a federal employee alleging employment discrimination based on handicap. He asserts that instead, these two provisions provide overlapping protection for federal employees alleging handicap discrimination. *Prewitt v. United States Postal Serv.*, 662 F.2d 292, 304 (5th Cir.1981) (assuming that an employee can sue the federal government under § 504 because he can do so under § 501); *see also Morgan v. United States Postal Serv.*, 798 F.2d 1162 (8th Cir.1986) (*per curiam*) (assuming without deciding

that employees may sue the Postal Service under § 504), *cert. denied*, 480 U.S. 948, 107 S.Ct. 1608, 94 L.Ed.2d 794 (1987); *Smith v. United States Postal Serv.*, 742 F.2d 257, 259–60 (6th Cir.1984) (citing *Prewitt*). To further bolster his position, DiPompo argues that Army regulations promulgated pursuant to § 504 of the Rehabilitation Act, 32 C.F.R. §§ 56.1—.10 (1987) make clear that the Army also believes that § 504 provides federal employees with protection from employment discrimination based on handicap.

Turning to DiPompo's last argument first, the Army regulations that interpret § 504 do not give employees any rights at all. In fact, as the regulations make clear, they are intended to prohibit employment discrimination by federal contractors, and discrimination based on handicap in such Army activities as the Tools for Schools program. *See, e.g.*, 32 C.F.R. §§ 56.7(b)(15) and 56.8(b) (1987). However, they do not reach the Army in its capacity as employer. Moreover, reviewing the provisions of the Rehabilitation Act, including amendments to the Act and the legislative history of those amendments makes clear that § 501 is a federal employee's exclusive remedy for employment discrimination based on handicap, and that §§ 501 and 504 do not provide overlapping protection for federal employees who allege employment discrimination based on handicap. *Boyd v. United States Postal Serv.*, 752 F.2d 410, 413 (9th Cir.1985) (citing *McGuinness v. United States Postal Serv.*, 744 F.2d 1318, 1321–22 (7th Cir.1984)).

Section 501 of the Rehabilitation Act currently provides in relevant part that:

Each department, agency, and instrumentality (including the United States Postal Service and the Postal Rate Commission) in the executive branch shall, ... submit ... an affirmative action program plan for the hiring, placement, and advancement of handicapped individuals in such department, agency, or instrumentality....

29 U.S.C. § 791(b). Section 504 of the Rehabilitation Act currently provides that:

No otherwise qualified individual with handicaps in the United States, ... shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

29 U.S.C. § 794. Before 1978, § 504 ended after the words "financial assistance." However, DiPompo's argument for a right of action against the government as his employer rests on the next clause. That clause was added in 1978.

In 1978, Congressman (now Senator) Jeffords, author of the amendment to § 504, thought that state agencies receiving federal funding were required to comply with § 504, while federal aid programs such as the Comprehensive Employment Training Act, also known as CETA, were exempted. 124 Cong.Rec. 13,901, 38,550–51 (1978) (discussing *Memorandum Opinion for the Gen. Counsel of the Dep't of Health, Educ. & Welfare*, 1 Op.Off. Legal Counsel 210 (1977)). In response to that perception, Congressman Jeffords proposed an amendment that he thought made direct federal aid programs, such as CETA, subject to § 504. 124 Cong.Rec. at 13,900–02, 38,550–52 (1978); *see also* H.R.Conf.Rep. No. 1780, 95th Cong., 2d Sess., at 92–93 (1978), *reprinted in* 1978 U.S.Code Cong. & Admin. News 7312, 7375, 7403–04 (adoption by the Conference Committee of Representative Jeffords' amendment to § 504). That amendment added the language which DiPompo believes grants him the right to sue the federal government for employment discrimination, *i.e.*, the phrase "or under any program or activity conducted by any Executive agency or by the United States Postal Service." Therefore, although the text of Congressman Jeffords' amendment alone might suggest an intent to provide federal employees with a right to sue the federal government for employment discrimination under § 504, the legislative history effectively refutes that suggestion.

Even if the legislative history of the Rehabilitation Act's substantive provisions

were ignored, the enforcement provisions of the Rehabilitation Act and their legislative history make clear that § 501 was intended to become one of the many resources a federal employee has in pursuing an employment discrimination claim, while § 504 was not. At the same time that Congressman Jeffords was amending § 504, Senator Cranston of California was interested in how §§ 501 and 504 would be enforced. The provision Senator Cranston wrote, § 505, provides in relevant part:

> (a)(1) The remedies, procedures, and rights set forth in section 717 of the Civil Rights Act of 1964 (42 U.S.C. 2000e–16), including the application of sections 706(f) through 706(k) (42 U.S.C. 2000e–5(f) through (k)) shall be available, with respect to any complaint under section 791 of this title [§ 501 of the Rehabilitation Act], to any employee or applicant for employment. . . .

> (a)(2) The remedies, procedures, and rights set forth in title VI of the Civil Rights Act of 1964 [42 U.S.C. 2000d *et seq.* ] shall be available to any person aggrieved by any act or failure to act by any recipient of Federal assistance or Federal provider of such assistance under section 794 of this title [§ 504 of the Rehabilitation Act].

The Rehabilitation, Comprehensive Services, and Developmental Disabilities Amendments of 1978, Pub.L. No. 95–602, § 120, 92 Stat. 2955, 2982 (1978), *codified at* 29 U.S.C. § 794a (1982). Explaining to the Senate why he sought passage of these provisions, Senator Cranston said in part that the "application of [T]itle VII would make specific the right to bring a private right of action with respect to section 501, subject, of course, to the provision for the exhaustion of administrative remedies and other rules and procedures set forth in [T]itle VII." 124 Cong.Rec. at 30347; *see also* H.R.Conf.Rep. No. 1780, 95th Cong., 2d Sess., 93 (1978) *reprinted in* 1978 U.S. Code Cong. & Admin.News 7375, 7404 (adoption by the Conference Committee of Senator Cranston's language). Clearly, Senator Cranston wanted federal employees alleging employment discrimination based on handicap to pursue their claims in the same way that federal employees alleging other forms of employment discrimination pursue theirs, through Title VII. That is why he enlarged Title VII's reach to include a right to sue for handicap discrimination. In contrast, Senator Cranston assumed that § 504 did not reach the federal government acting an employer, but only as a direct provider of services or a funder of other service providers. That is why he made § 504 enforceable through Title VI, a statute which really is not intended to benefit individuals so much as it is intended to police federally funded programs that do not comply with federal non-discrimination policies. *McGuinness,* 744 F.2d at 1321–22 (collecting cases).

Additionally, there can be no merit to the argument that Senator Cranston sought to repeal Congress's earlier finding that Title VII was a federal employee's exclusive remedy. As an initial matter, Senator Cranston does not articulate such a desire, and a repeal by implication is generally disfavored. *Crawford Fitting Co. v. J.T. Gibbons, Inc.,* 482 U.S. 437, 107 S.Ct. 2494, 2497, 96 L.Ed.2d 385 (1987). Moreover, it defies logic to believe that Senator Cranston wanted such a result. In order to believe that he did, one would have to believe that Senator Cranston first made laws against handicap discrimination part of the Title VII regulatory complex, an admittedly rigorous route for federal employees, and then made those substantive provisions irrelevant by giving handicapped federal employees a shortcut to federal court through Title VI, which as seen before, is not really intended to help individuals in any case. *McGuinness,* 744 F.2d at 1321. As *Brown* points out, this is perverse and simply defies logic. 425 U.S. at 833, 96 S.Ct. at 1968. For these reasons, DiPompo's fourth claim, alleging violation of § 504 of the Rehabilitation Act, cannot be brought against the individual defendants in their official capacities, notwithstanding DiPompo's arguments to the contrary.

### IV

■ Turning from which statute DiPompo may sue under to whom he may sue, a

federal employee alleging employment discrimination under Title VII may sue the head of the agency only in his official capacity, and no one else. 42 U.S.C. § 2000e–16(c) (1982). Therefore, the proper agency defendant in this action is the Secretary, not West Point or defendants Diaz, O'Connell, Heller, Ferraiuolo, or Francis, sued in their official capacities. Accordingly, the suit against defendant West Point will be dismissed in its entirety, and the suit against defendants Diaz, O'Connell, Heller, Ferraiuolo, and Francis, sued in their official capacities, will also be dismissed.

As a corollary, DiPompo's suit against each of the individual defendants in their individual capacities will be dismissed as well. DiPompo merely takes the allegations of employment discrimination, allocates them among the individual defendants, and sees in the result a conspiracy to violate various state and federal statutes, violations of the statutes themselves, and the intentional infliction of emotional distress. Assuming without deciding that DiPompo could sue individuals for violating § 501 or § 504 of the Rehabilitation Act, or violating the New York Human Rights Law, if DiPompo's maneuver were successful, it would permit him to circumvent *Brown*'s holding that a federal employee's sole remedy for employment discrimination is Title VII. *See White v. General Servs. Admin.*, 652 F.2d 913, 916–17 (9th Cir. 1981); *Newbold v. United States Postal Serv.*, 614 F.2d 46, 47 (5th Cir.) (*per curiam*), *cert. denied*, 449 U.S. 878, 101 S.Ct. 225, 66 L.Ed.2d 101 (1980); *Davis v. Califano*, 613 F.2d 957, 958 n. 1 (D.C.Cir.1979); *Rottman v. United States Coast Guard Academy*, 630 F.Supp. 1123, 1126 (D.Conn. 1986). Therefore, DiPompo's first, third, fourth, fifth, and sixth claims against the individual defendants, alleging respectively violation of 42 U.S.C. § 1985(3); §§ 501 and 504 of the Rehabilitation Act; and New York Executive Law § 296; and alleging intentional infliction of emotional distress, all are dismissed.

With the dismissal of all of the original defendants to this suit, the motions formerly made by those defendants will be deemed those of the Secretary, and DiPompo's motions will be deemed brought against the Secretary.

V

DiPompo asserts two different theories of liability under § 501 of the Rehabilitation Act, disparate impact discrimination, and surmountable barriers discrimination. The Secretary does not assert that this court lacks subject matter jurisdiction over the surmountable barriers claim, but he does assert that DiPompo has not exhausted his administrative remedies on his disparate impact claim. The Secretary argues that because DiPompo never raised his disparate impact claim in his EEO complaint, he cannot now assert that basis of liability in federal court.

DiPompo's second EEO complaint is not always perfectly clear. However, even assuming that the disparate impact claim is being raised for the first time in this suit, the claim may be heard in this forum because it is reasonably related to DiPompo's second EEO charge. A claim of discrimination is reasonably related to an EEO charge if: a) a plaintiff presents it to the EEO office; or b) the EEO office investigates the claim; or c), the EEO office's investigation of the original charge reasonably could be expected to encompass the claim. *Almendral v. New York State Office of Mental Health*, 743 F.2d 963, 967 (2d Cir.1984); *Smith v. American President Lines, Ltd.*, 571 F.2d 102, 107 n. 10 (2d Cir.1978) (citing cases); *Grant v. Morgan Guaranty Trust Co. of N.Y.*, 548 F.Supp. 1189, 1191 (S.D.N.Y.1982). Put differently, if the initial EEO charge did not apprise the defendant that the claim in question would be subject to the EEO office's inquiry, then that claim is not reasonably related to the EEO charge. *Fitch v. R.J. Reynolds Tobacco*, 678 F.Supp. 1046, 1049 (S.D.N.Y.1987); *see also Stewart v. INS*, 762 F.2d 193, 197–98 (2d Cir.1985); *Kirkland v. Buffalo Bd. of Educ.*, 622 F.2d 1066, 1068 (2d Cir.1980) (*per curiam*). The facts asserted by DiPompo in his second EEO complaint could have led the EEO

officer to investigate DiPompo's claim as a disparate impact claim, because DiPompo complained that the reading test, a neutral rule, operated to discriminate against him because of his dyslexia, a recognized handicap. Therefore, the fact that the EEO officer never considered whether DiPompo could state a claim for disparate impact discrimination does not mean that the claim is barred for failure to exhaust administrative remedies. Accordingly DiPompo's disparate impact claim will be considered in this proceeding.

A claim based on the disparate impact of a neutral rule upon a protected class is now a familiar part of the Title VII landscape. *Griggs v. Duke Power Co.*, 401 U.S. 424, 433–34, 91 S.Ct. 849, 854–55, 28 L.Ed.2d 158 (1971). In addition, discrimination based on surmountable barriers, alternatively known as the failure to make reasonable accommodation, is a familiar claim in religious discrimination cases. *Trans World Airlines v. Hardison*, 432 U.S. 63, 97 S.Ct. 2264, 53 L.Ed.2d 113 (1977). As applied in § 501 cases, a claim of surmountable barriers discrimination merely imposes an additional burden on defendants once a plaintiff proves a *prima facie* case of disparate impact or disparate treatment discrimination. *Prewitt*, 662 F.2d at 307–08. The Secretary does not contest the grafting of a surmountable barriers claim onto § 501, and therefore that issue will not be addressed. The Secretary does contest the applicability of disparate impact analysis to § 501. However, because the Secretary adduces sufficient evidence to defeat summary judgment under either a disparate impact or surmountable barriers analysis, there is no need to seek an answer to this question, explicitly left open by the Second Circuit in *Joyner By Lowry v. Dumpson*, 712 F.2d 770, 775 n. 7 (2d Cir.1983), of whether a showing of disparate impact alone is sufficient to warrant recovery under § 501 of the Rehabilitation Act.

## VI

Both DiPompo and the Secretary move for summary judgment on the claim of employment discrimination in violation of § 501 of the Rehabilitation Act. The mere fact that both parties move for summary judgment does not mean that one party must prevail. *Home Ins. Co. v. Aetna Casualty & Sur. Co.*, 528 F.2d 1388, 1390 (2d Cir.1976) (*per curiam*). Instead, if neither party meets his burden of proof on a motion for summary judgment, neither motion will be granted. *Golden Eagle Liberia, Ltd. v. Saint Paul Fire & Marine Ins. Co.*, 685 F.Supp. 393, 395–96 (S.D.N.Y. 1988); *Steinberg v. Adams*, 90 F.Supp. 604, 608 (S.D.N.Y.1950).

Under Fed.R.Civ.P. 56(c), a trial judge must grant summary judgment if the evidence offered demonstrates that "there is no genuine issue as to any material fact and [that] the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); *Murray v. Xerox Corp.*, 811 F.2d 118, 121 (2d Cir.1987). The moving party has the initial responsibility of informing the court of the basis for its motion, and identifying "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which the movant believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(c)); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 153, 90 S.Ct. 1598, 1606, 26 L.Ed.2d 142 (1970). However, once a movant meets that burden, and establishes a *prima facie* case for summary judgment, the opponent of summary judgment must adduce enough evidence to support a jury verdict in his favor. *Liberty Lobby*, 477 U.S. at 249, 106 S.Ct. at 2510 (citing *First Nat'l Bank of Ariz. v. Cities Svc. Co.*, 391 U.S. 253, 288–89, 88 S.Ct. 1575, 1592–93, 20 L.Ed.2d 569 (1968)); *see Trebor Sportswear Co. v. The Limited Stores, Inc.*, 865 F.2d 506 (2d Cir.1989); 10A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2727 (2d ed. 1983).

In determining whether a genuine issue of material fact has been raised, a court must resolve all ambiguities and

draw all reasonable inferences against the moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962) (*per curiam*), *cited in Donahue v. Windsor Locks Bd. of Fire Comm'rs.,* 834 F.2d 54, 57 (2d Cir.1987). Therefore, not only must there be no genuine issue as to the evidentiary facts, but there must also be no controversy regarding the inferences to be drawn from them. *Donahue,* 834 F.2d at 57, *citing Schwabenbauer v. Board of Educ.,* 667 F.2d 305, 313 (2d Cir.1981). However, when there is nothing more than a metaphysical doubt as to the material facts, summary judgment should be granted. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986).

As with any Title VII case, plaintiff must prove a *prima facie* case of discrimination by a preponderance of the evidence. If plaintiff succeeds, the burden shifts to the defendant to give a legitimate, nondiscriminatory reason for why he did not hire plaintiff. If the defendant articulates such a reason, then the plaintiff must prove by a preponderance of the evidence that the employer's reasons were in fact pretextual. *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981); *McDonnell–Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed. 2d 668 (1973); *Smith v. American Express Co.,* 853 F.2d 151, 154 (2d Cir.1988).

■ DiPompo may establish a *prima facie* case of unlawful discrimination by proving that: (1) his dyslexia makes him a handicapped person within the meaning of the Rehabilitation Act; (2) except for his dyslexia, he is qualified to be a structural fire fighter at West Point; (3) the requirement that a fire fighter be able to read at a 12th grade level has a disproportionate impact on persons with dyslexia; and (4) there is a plausible explanation for how (a) his dyslexia can be accommodated, or (b) persons who cannot read at a 12th grade level can safely and efficiently perform the essential tasks of a structural fire fighter at West Point. *de la Torres v. Bolger,* 781

F.2d 1134, 1136 (5th Cir.1986) (*per curiam*) (regulations promulgated by Equal Employment Opportunity Commission may be looked to for guidance in Title VII cases); *Prewitt,* 662 F.2d at 306–07, 309–310; 29 C.F.R. 1613.705 (1988); *see Williams v. Casey,* 691 F.Supp. 760, 767 (S.D.N.Y.1988); *Dexler v. Tisch,* 660 F.Supp. 1418, 1427 (D.Conn.1987); *cf. Guinn v. Bolger,* 598 F.Supp. 196, 200 (D.D.C.1984) (finding the existence of a *prima facie* case under § 501 because § 504 standards have been met), *vacated by stipulation,* No. Civ. A 83–1319 (D.D.C. Oct. 30, 1985). The Secretary concedes that DiPompo's dyslexia makes him a handicapped person within the meaning of the Rehabilitation Act, and he does not seem to contest that DiPompo has adduced evidence to support the second and third elements of his *prima facie* case. However, the Secretary argues that DiPompo has failed to raise an issue of fact regarding the fourth element. Specifically, the Secretary asserts that DiPompo has neither offered a plausible accommodation for his handicap, nor a plausible argument for how a person who cannot read at a 12th grade level can be a safe and efficient West Point fire fighter.

Viewing the facts in the light most favorable to DiPompo, the record reveals that at the time his claim arose, DiPompo was a volunteer fire fighter who had completed several training courses and had over 1000 hours of experience in a firehouse. In addition, the evidence suggests that DiPompo enjoys the respect of his supervisors at the Beacon, New York Fire Department, and that he does his job well. Moreover, an expert in the field of fire fighter training has determined that DiPompo's illiteracy should have no effect on his ability to become a successful fire fighter. This evidence, if believed by a finder of fact who draws all reasonable inferences in favor of DiPompo, could support a conclusion that it is plausible for someone who cannot read at a 12th grade level to be a safe and efficient fire fighter in many different environments, including West Point.

While there is no evidence to suggest that DiPompo's ability to fight fires with the Beacon, New York, Fire Department is

at all probative of his ability to fight fires in an environment such as West Point, the burden is on the Secretary to show that there is no genuine issue about the applicability of DiPompo's experience at the Beacon Fire Department to the job of fire fighter at West Point. In order to prevail on his motion for summary judgment, the Secretary must show that the two fire departments are different enough so that satisfactory performance in the Beacon fire brigade does not predict satisfactory performance at West Point's fire company. The Secretary has adduced no evidence on this issue at all. Therefore, while DiPompo's evidence may not prevail at a full trial on the merits, it is sufficient nonetheless to raise a genuine issue of material fact regarding DiPompo's claim of employment discrimination. Accordingly, the Secretary's motion for summary judgement dismissing DiPompo's claim under § 501 is denied.

Turning to DiPompo's motion for summary judgment, once a *prima facie* case of handicap discrimination has been established, the Secretary must show that persons who cannot read at a 12th grade level cannot safely and efficiently perform the essentials of the position of structural fire fighter. Moreover, because the issue of surmountable barriers is raised by DiPompo, the Secretary must further show that no accommodation can reasonably be made that would enable DiPompo to perform the essentials of the job safely and efficiently. *Gardner v. Morris,* 752 F.2d 1271, 1279–81 (8th Cir.1985); *Prewitt,* 662 F.2d at 310. That is, the Secretary must demonstrate that any accommodation would impose an undue hardship on the operation of the fire fighting program. *See* 29 C.F.R. § 1613.704 (1988).

The criteria to be explored in determining undue hardship are: (1) the overall size of the program, the number of employees, number and type of facilities, and the size of the budget; (2) the composition and structure of the fire fighting units; and (3) the cost of accommodating DiPompo. *Treadwell v. Alexander,* 707 F.2d 473, 477–78 (11th Cir.1983); 29 U.S.C. § 794a(a)(1); 29 C.F.R. § 1613.704(c) (1988). If, after exploring these criteria, the finder of fact believes by a preponderance of the evidence that accommodating DiPompo would endanger the health or safety of the fire fighters at West Point, then such accommodation is unreasonable, and the Secretary would have shown that the West Point fire fighting force did not illegally discriminate against DiPompo because of his handicap. *Treadwell,* 707 F.2d at 478.

The evidence, when seen in the light most favorable to the Secretary, suggests that the West Point fire department is a small force that works at three scattered fire stations. The individual fire fighting crews are small, and fire fighters are often required to work without a great deal of supervision. In addition, because of there are not many fire fighters, every fire fighter must be able to do every essential task, including those tasks that may require reading at a 12th grade level. Therefore, when seen through the eyes of a finder of fact who draws all reasonable conclusions in favor of the Secretary, this evidence could justify the conclusion that the only way to accommodate DiPompo is by eliminating what the Secretary considers to be an essential job requirement, thereby threatening the efficient functioning of the fire fighting crews. Although DiPompo may be able to adduce evidence at trial which proves by a preponderance of the evidence that the ability to read is not essential to fighting fires at West Point, the only evidence he has adduced thus far is his experience at the Beacon, New York Fire Department, which, as seen before, is of uncertain probative value. Therefore, when the entire record is considered, the Secretary has adduced sufficient evidence to survive DiPompo's motion for summary judgment. Accordingly, DiPompo's motion for summary judgment will be denied.

### VII

■ The Secretary moves for sanctions against DiPompo for asserting that the individual defendants may be sued under the Rehabilitation Act. Fed.R.Civ.P. 11. Under Rule 11, sanctions must be imposed when it appears that a competent attorney,

after reasonable inquiry, could not form the reasonable belief that a pleading is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law. *Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 254 (2d Cir. 1985), *cert. denied,* —— U.S. ——, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987); *see* Standards and Guidelines For Practice Under Rule 11 of the Federal Rules of Civil Procedure, *reprinted in* 121 F.R.D. 101, 113–20 (1988). In other words, when it should be clear to an objective observer that a claim has absolutely no chance of success under existing precedents, and where no objectively reasonable argument has been advanced to extend, modify, or reverse the law as it stands, Rule 11 has been violated. *Eastway Constr. Corp.*, 762 F.2d at 254.

■ The premise for DiPompo's argument was that he had a claim under § 504 of the Rehabilitation Act. DiPompo then argued that because it is possible that individuals working for private employers might be liable for violating § 504 of the Rehabilitation Act, the individual defendants in this case should be held liable for violating DiPompo's rights under § 504. *Chaplin v. Consolidated Edison Co. of N.Y.*, 579 F.Supp. 1470, 1475 n. 30 (S.D.N. Y.1984). As seen before, a rather extensive analysis was required before it became clear that § 504 did not give DiPompo a claim against the government for employment discrimination based on handicap, and some circuits have held that the federal employees may obtain relief for employment discrimination under § 504. See III, *supra.* Moreover, state or federal employees are not completely immune from liability merely because they work for a governmental entity. *Waller v. Butkovich*, 584 F.Supp. 909 (M.D.N.C.1984) (state government officials may be sued for violating demonstrators' civil rights). Therefore, it appears that a competent attorney could form a reasonable belief that the law should be extended to make individual federal government employees liable for damages under § 504 of the Rehabilitation Act. Accordingly, the Secretary's motion is denied.

## VIII

To recapitulate, DiPompo's suit against all of the original defendants is dismissed in its entirety. DiPompo's suit against the Secretary is limited to his second claim, based on § 501 of the Rehabilitation Act, and is further limited to those issues raised in his second EEO complaint. All other claims against the Secretary are dismissed as well. In addition, both DiPompo's and the Secretary's motions for summary judgment on DiPompo's claim based on § 501 of the Rehabilitation Act are denied. Finally, the Secretary's motion for sanctions is denied.

SO ORDERED.