**Sonia M. MATOS, Plaintiff,**

v.

**Andrew C. HOVE, Jr., Chairman of the Board of Directors of the Federal Deposit Insurance Corporation, and the Federal Deposit Insurance Corporation, Defendants.**

**No. 94 Civ. 9343 (JES).**

United States District Court,
S.D. New York.

Sept. 25, 1996.

Phillip D. Miller, Brookville, New York, for Plaintiff.

Federal Deposit Insurance Corporation, Washington, DC (Ingeborg G. Chaly, of counsel), Federal Deposit Insurance Corporation, New York City (Esther D. Miller, of counsel), for Defendants.

## MEMORANDUM OPINION AND ORDER

SPRIZZO, District Judge:

Pursuant to Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.*, 42 U.S.C. § 1981, and common law, plaintiff Sonia M. Matos brings the instant action against Andrew C. Hove, Jr., Chairman of the Board of Directors of the Federal Deposit Insurance Corporation, and the Federal Deposit Insurance Corporation ("FDIC") (together "defendants"), alleging that the FDIC terminated Matos from her position as a Grade–11 Civil Rights/Consumer Affairs Assistant on the basis of her race and/or color and/or national origin. Pursuant to Federal Rule of Civil Procedure 56(c), defendants move for summary judgment. For the reasons that follow, defendants' motion is granted.

## BACKGROUND

On or about December 6, 1993, Sonia M. Matos, a black woman of Puerto Rican origin,

was terminated from her position as a Grade–11 Civil Rights/Consumer Affairs Assistant at the FDIC. *See* Plaintiff's Amended Complaint dated August 7, 1995 ("Am. Compl.") ¶¶ 8, 14.

On January 18, 1994, Matos contacted Venessa Villalba, an Equal Employment Opportunity ("EEO") Counselor with the FDIC, to discuss her concerns that the FDIC had discriminated against her. *See* Defendant's Notice of Motion for Summary Judgment dated September 8, 1995 ("Def.'s Mot. Summ.J."), Exh. A. On February 1, 1994, Matos's complaint was assigned to EEO Counselor Juanita Pinkston. *Id.* On February 15, 1994, Pinkston discussed Matos's complaint with Matos and her attorney via a telephone conference. *Id.*

On February 17, 1994, pursuant to Pinkston's request, Matos's attorney provided Pinkston with a letter outlining Matos's allegations of discrimination. *See* Def.'s Mot. Summ.J., Exh. I. In this letter, Matos claimed that she was the only Civil Rights/Consumer Affairs Assistant required to fill out a daily work log, and that the FDIC denied scheduled salary increases to her and terminated her because of previous grievance complaints she had made. *Id.*

On March 7, 1994, Pinkston discussed Matos's complaint with Matos's previous supervisor, Deirdre Foley, and the FDIC's Assistant Regional Director of Compliance, Jack Hauprich, via another telephone conference. *See* Def.'s Mot.Summ.J., Exh. A. Pinkston suggested that Matos's complaint could be resolved if the FDIC would reinstate Matos with backpay. *Id.* Foley and Hauprich refused to reinstate Matos, claiming that only nondiscriminatory, job-related criteria and objective FDIC policies were used to evaluate her work and determine her eligibility for termination. *Id.*

On March 10, 1994, Pinkston notified Matos's attorney that Matos could file a formal complaint with the FDIC's Office of Equal Opportunity ("OEO"). *Id.*

On March 22, 1994, Matos timely filed a formal administrative complaint with the FDIC alleging that it had discriminated against her by its misapplication of its rules and/or regulations governing sick leave benefits, annual leave benefits, medical leave benefits, emergency leave benefits, AWOL disciplinary actions, evaluation of employee performance, and discharge. *See* Def.'s Mot. Summ.J., Exh. B. Matos indicated that these actions occurred from

> on or about 1989 through to the date of discharge; or such time frame that was used by the FDIC to support the action to discharge [her] for unsatisfactory performance, and to otherwise discipline [her] by restricting sick leave, annual leave, emergency leave, leave without pay, salary increases; and, such time frame that was used by the FDIC to impose other work restrictions, or other disciplinary actions, including letters of counseling, letters of reprimand, AWOL and suspensions.

*Id.*

On May 12, 1994, FDIC Complaints Adjudication Manager, Peggy Jo Coates, requested that Matos's attorney specifically identify the alleged instances of discriminatory actions taken against Matos so that the OEO could determine the timeliness of and the issues involved in her complaint. *See* Def.'s Mot.Summ.J., Exh. C. Coates indicated that failure to comply with this request would result in dismissal of Matos's administrative complaint for failure to prosecute. *Id.*

On June 9, 1994, Matos's attorney responded that the administrative complaint was sufficient as drafted, but indicated that if the FDIC was unwilling to investigate Matos's complaint, he would detail all instances of alleged discriminatory conduct if the FDIC forwarded Matos's entire personnel file and all applicable FDIC personnel rules to him. *See* Def.'s Mot.Summ.J., Exh. D. The FDIC did not forward Matos's personnel file or its rules.

On June 30, 1994, Coates mailed to Matos's attorney a proposed identification of the issue for investigation.[1] *See* Def.'s Mot.

---

1. The FDIC proposed the following issue for investigation:

   Whether because of her race (Black), sex (female) and national origin (Puerto Rican), Ms. Matos was subjected to harassment commenc-

Summ.J., Exh. E. On July 16, 1994, Matos's attorney responded that he disagreed with the identified issue, and stated: "as a matter of record, I must object to your offices [sic] repeated attempts to rewrite, recharacterize and/or restate Ms. Matos' [sic] complaint." Def.'s Mot.Summ.J., Exh. F.

On August 11, 1994, Coates rescinded the proposed issue for investigation and again requested that Matos's attorney provide specific information identifying the alleged instances of discrimination as well as their relevant dates. *See* Def.'s Mot.Summ.J., Exh. G. Coates's request again indicated that failure to provide the requested information would result in dismissal of Matos's administrative complaint for failure to prosecute. *Id.* Matos's attorney failed to provide the requested information.

On September 26, 1994, the OEO notified Matos's attorney that Matos's administrative complaint was dismissed for failure to prosecute. *See* Def.'s Mot.Summ.J., Exh. H. The letter was the FDIC's final decision on the matter and granted Matos the right to file suit in United States District Court challenging the dismissal. *Id.*

On December 29, 1994, Matos filed the instant action. On August 7, 1995, Matos filed an amended complaint seeking declaratory and injunctive relief together with compensatory and punitive damages. Matos alleges that the FDIC terminated her from her position as a Grade–11 Civil Rights/Consumer Affairs Assistant on the basis of her race and/or color and/or national origin, in violation of Title VII of the Civil Rights Act, 42

U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981. In addition, Matos claims that the FDIC abused its federal power by violating her federal due process rights. She also asserts common law claims for breach of contract, fraud, and defamation.

Pursuant to Federal Rule of Civil Procedure 56(c), defendants move for summary judgment on the ground that Title VII is Matos's exclusive federal remedy and that the Court lacks subject matter jurisdiction because she has failed to exhaust her administrative remedies. In addition, defendants claim that even if Matos's pendent state claims are not barred by Title VII, the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b), precludes suit. Further, defendants argue that the Court lacks subject matter jurisdiction over Matos's breach of contract claim and that Matos is not entitled to punitive damages against the Government.

## DISCUSSION

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is appropriate where, as here, "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–52, 106 S.Ct. 2505, 2509–12, 91 L.Ed.2d 202 (1986).

Under Title VII, an individual complaining of federal employment discrimination must file a timely charge of discrimination with the employing agency.[2] *See* 29

ing September 3, 1992, when she was denied a within grade salary increase up to her termination from employment, effective December 6, 1993. Examples of alleged harassment include the requirement to maintain a daily work log; assignment of unreasonable deadlines; notice of leave restriction; issuance of a letter of reprimand; issuance of a memorandum regarding excessive absences and unacceptable level of work; and, all elements contained in the proposal to remove Ms. Matos from her position as Consumer Affairs/Civil Rights Assistant, GG–301–11, step 4.
Def.'s Mot.Summ.J., Exh E.

2. Although Matos argues that she is not a federal employee for the purposes of Title VII, FDIC employees are clearly incorporated within Title VII's federal employment provisions by virtue of

their status as government corporation employees. Title VII provides with respect to federal employment that "[a]ll personnel actions affecting employees or applicants for employment ... in executive agencies as defined in section 105 of Title 5 ... shall be made free from any discrimination based on race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–16(a) (1994). Section 105 of Title 5 further provides, "'Executive agency' means an Executive department, a Government corporation, and an independent establishment." 5 U.S.C. § 105 (1996). By congressional enactment, the FDIC is a government corporation. *See* 12 U.S.C. § 1811 *et seq.* (1989); *see also Castro v. United States*, 775 F.2d 399 (1st Cir.1985) (applying federal employment provision of Title VII and administrative exhaustion to suit by former FDIC employees);

C.F.R. § 1613.214 (1995) ("An aggrieved person must initiate contact with a counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action."); 29 C.F.R. § 1614.109 (1995) (administrative complaint must contain statement that describes generally action(s) or practice(s) that form basis of complaint). The claimant is then authorized to file a civil action within 90 days of receiving notice of a final administrative decision on the complaint, or if after 180 days from the date of filing a complaint with the agency or an appeal with the EEOC, there has been no administrative decision. *See* 42 U.S.C. § 2000e–16(c) (1994); 29 C.F.R. § 1613.281 (1995).

Furthermore, courts have imposed on claimants a concurrent obligation of good faith participation in the administrative process prior to bringing a civil action, and have dismissed complaints where a claimant fails to provide sufficient information that would enable the agency to investigate the claim. *See Munoz v. Aldridge,* 894 F.2d 1489, 1492 (5th Cir.1990) (exhaustion requires good faith participation in Title VII administrative process by providing information necessary to investigation); *Wade v. Secretary of Army,* 796 F.2d 1369 (11th Cir.1986) (Title VII claimant who fails to provide agency with information necessary to evaluate merits of complaint cannot be deemed to have exhausted administrative remedies); *Woodard v. Lehman,* 717 F.2d 909, 916 (4th Cir.1983) (dismissal for failure to exhaust administrative remedies appropriate where Title VII claimant unable to specify discriminatory action within limitations period); *Edwards v. Department of the Army,* 708 F.2d 1344, 1347 (8th Cir.1983) (dismissal for failure to exhaust administrative remedies appropriate where Title VII claimant failed to make generalized discrimination charge more specific); *Jordan v. United States,* 522 F.2d 1128, 1133 (8th Cir.1975) (dismissal for failure to ex-

haust administrative remedies appropriate where Title VII claimant failed to cooperate with administrative procedure); *Ettinger v. Johnson,* 518 F.2d 648 (3d Cir.1975) (remanded for court to determine whether Title VII claimant exhausted administrative remedies); *but see Maher v. United States Postal Serv.,* 729 F.Supp. 1444 (S.D.N.Y.1990) (holding that doctrine of exhaustion of remedies should not be applied in federal employment Title VII cases).[3]

The Second Circuit appears not to have addressed administrative exhaustion under Title VII. However, in the context of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 633a (1985), it has supported the doctrine and indicated that to allow a plaintiff to abandon the administrative process would tend to frustrate the ability of an agency to deal with complaints. *See Wrenn v. Secretary, Dept. of Veterans Affairs,* 918 F.2d 1073, 1078 (2d Cir.1990), *cert. denied* 499 U.S. 977, 111 S.Ct. 1625, 113 L.Ed.2d 721 (1991) (requiring exhaustion for ADEA claims, and citing *Munoz, Edwards* and *Jordan* with approval). The Second Circuit has further indicated that the purpose of such statutory prerequisites to bringing a civil action is to provide an opportunity for the resolution of discrimination complaints by means of conference, conciliation, and persuasion. *Id.* Since administrative exhaustion under Title VII serves the same purposes as under the ADEA, the Court finds the doctrine equally applicable here.

In this case, Matos's Title VII claims must be dismissed because she has failed to exhaust her administrative remedies as a matter of law. Given Matos's formal complaint and the correspondence between her and the FDIC, it is clear that Matos failed to cooperate with the FDIC in responding to its requests to identify specific acts of discrimination which would enable it to investigate the timeliness of, and issues raised in, her complaint. Nor could the FDIC meaningfully investigate Matos's complaint as submit-

---

*Greenberg v. FDIC,* 1992 W.L. 245513, at *7 (S.D.N.Y. Sept. 15, 1992) (also characterizing FDIC employee as a federal employee under Title VII).

**3.** *Maher* is of questionable validity in light of the Second Circuit's subsequent decision in *Wrenn v. Secretary, Dept. of Veterans Affairs,* 918 F.2d 1073 (2d Cir.1990), *cert. denied* 499 U.S. 977, 111 S.Ct. 1625, 113 L.Ed.2d 721 (1991), discussed supra.

ted. *See Wilson v. Pena,* 79 F.3d 154, 164 (D.C.Cir.1996) (if agency able to take final action on merits of complaint, suit not barred solely for any default in responding to agency's request for information). Indeed, by rejecting the FDIC's proposed issue for investigation, Matos's attorney removed any basis upon which the FDIC could investigate Matos's vague assertions.

■ Furthermore, the FDIC is not required to provide Matos with her personnel file and its personnel rules in order for Matos to determine whether she has a claim. To impose such a disclosure obligation on the FDIC would unjustifiably burden the agency without advancing Title VII's conciliatory purpose. Indeed, it is clear that under Federal Rule of Civil Procedure 26, plaintiffs may not use discovery to determine whether they have a claim. *See Avnet, Inc. v. Am. Motorists Ins. Co.,* 115 F.R.D. 588, 592 (S.D.N.Y.1987) (discovery rules not hunting license to conjure up claim that does not exist); *Samuels v. Eleonora Beheer, B.V.,* 500 F.Supp. 1357, 1362 (S.D.N.Y.1980), *aff'd without op.,* 661 F.2d 907, 910 (2d Cir.1981). A fortiori, it follows that in the administrative context, where discovery is usually not available, a claimant similarly is not entitled to such discovery. *See generally NLRB v. Interboro Contractors, Inc.,* 432 F.2d 854, 857–58 (2d Cir.1970), *cert. denied,* 402 U.S. 915, 91 S.Ct. 1375, 28 L.Ed.2d 661 (1971) (well settled that parties to judicial or quasi-judicial proceedings not entitled to pre-trial discovery as matter of constitutional right); *Silverman v. Commodity Futures Trading Comm'n,* 549 F.2d 28, 33 (7th Cir.1977) (Federal Rules of Civil Procedure do not apply to administrative proceedings, nor does Administrative Procedure Act contain any provision for pre-trial discovery in administrative process).

In sum, Matos is required to know the general substance and approximate time of any alleged discriminatory acts prior to filing a formal complaint with the FDIC. This is especially true where, as here, the facts and office rules at issue are not within the sole control or possession of the FDIC, but are facts which she presumably either knows or clearly should have known.[4]

Nor is Matos entitled to review on the merits of her claims because more than 180 days passed from the filing of her initial administrative complaint with the FDIC. *See Munoz v. Aldridge,* 894 F.2d 1489, 1493 (5th Cir.1990) (approving of administrative exhaustion even where a case persists in the administrative phase beyond 180 days); *see generally Johnson v. Bergland,* 614 F.2d 415, 418 (5th Cir.1980) (where agency does not reach merits of complaint because claimant fails to comply with administrative procedures, court should not reach merits either). It follows that to allow Matos to sue directly in federal court, especially where, as here, the agency dismissed her administrative complaint for failure to prosecute, would frustrate the purposes of administrative exhaustion.

■ Matos's § 1981, abuse of power and other pendent state law claims, which similarly challenge the circumstances surrounding Matos's discharge, must also be dismissed. Under *Brown v. General Serv. Admin.,* 425 U.S. 820, 835, 96 S.Ct. 1961, 1969, 48 L.Ed.2d 402 (1976), federal employees are restricted to Title VII when complaining of employment discrimination. *See also Annis v. County of Westchester,* 36 F.3d 251, 255 (2d Cir.1994) (although Title VII is not sole remedy for employment discrimination by state and municipal employers, it is clear that federal employees are restricted to Title VII); *DiPompo v. West Point Military Academy,* 708 F.Supp. 540, 544 (S.D.N.Y.1989) (summarizing *Brown* holding that balance, completeness, and structural integrity of federal employment provision of Title VII is inconsistent with contention that judicial remedy afforded was designed merely to supplement other forms of judicial relief). Furthermore, Matos may not bring her breach of contract claim because, absent specific legislation, federal employees derive

---

4. Federal regulations provide certain discovery for the agency investigator during the investigation of a complaint. *See* 29 C.F.R. § 1614.108 (1995). They also provide discovery for claim-

ants prior to any hearing if a claimant, unlike Matos, has requested a hearing before an administrative judge. *See* 29 C.F.R. § 1614.109 (1995).

the benefits and emoluments of their positions from appointment, not any contractual or quasi-contractual relationship with the government. *See, e.g., United States v. Larionoff,* 431 U.S. 864, 869, 97 S.Ct. 2150, 2154, 53 L.Ed.2d 48 (1977); *Bell v. United States,* 366 U.S. 393, 401, 81 S.Ct. 1230, 1235, 6 L.Ed.2d 365 (1961); *Hayman v. United States,* 218 Ct.Cl. 729, 1978 WL 23858 (1978); *see also* 5 U.S.C. § 2105 (1996). Therefore, Matos's employment relationship is governed by statute and regulation, not contract. *See Hambsch v. United States,* 12 Cl.Ct. 744, 750 (1987), *vacated for lack of subject matter jurisdiction,* 857 F.2d 763 (Fed.Cir.1988), and *cert. denied,* 490 U.S. 1054, 109 S.Ct. 1969, 104 L.Ed.2d 437 (1989).

Moreover, Matos's abuse of process, fraud and defamation claims are barred by the Federal Torts Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b) and 2680(h), which limits the FDIC's authority to sue and be sued. *See* 28 U.S.C. § 2679(a) (1994); *FDIC v. Meyer,* 510 U.S. 471, 486, 114 S.Ct. 996, 1006, 127 L.Ed.2d 308 (1994); 12 U.S.C. § 1819(a) (1989). Pursuant to the FTCA, these claims are exempt from any waiver of immunity, and thus may not be brought against the FDIC or the United States. *See* 28 U.S.C. § 1346(b) (1993), 28 U.S.C. § 2680(h) (1994); *see also* Plaintiff's Answering Memorandum at 6 (conceding that fraud and defamation claims barred).

Nor can Matos assert a claim under the FTCA's waiver of immunity for abuse of process based on actions by investigative or law enforcement officers because the FDIC was not acting in such a capacity. *See* 28 U.S.C. § 2680(h) (1994); *see generally Bernard v. United States,* 25 F.3d 98, 104 (2d Cir.1994) (finding that the FTCA does not authorize suits for abuse of process based on the actions of government prosecutors). Furthermore, even if the Court were to construe Matos's abuse of process claim as one pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), the Supreme Court has declined to extend a *Bivens* cause of action to actions against agencies of the Federal Government. *See*

*FDIC v. Meyer,* 510 U.S. at ———, 114 S.Ct. at 1006.

### CONCLUSION

For the reasons set forth above, defendants' motion for summary judgment is granted. The Clerk of Court is directed to enter judgment accordingly and close the above-captioned action.

It is **SO ORDERED.**