G. Dean HARGENS, Plaintiffs,

v.

**UNITED STATES DEPARTMENT OF AGRICULTURE, Secretary Mike Espy, et al., Defendants.**

No. C 92–4076.

United States District Court,
N.D. Iowa,
Western Division.

Oct. 26, 1994.

I John Rossi, Des Moines, IA, for plaintiff.

Willis A. Buell, Asst. U.S. Atty., Sioux City, IA, for defendants.

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

BENNETT, District Judge.

I. PROCEDURAL BACKGROUND .................................................1317

II. STANDARDS FOR SUMMARY JUDGMENT .......................................1318

III. FINDINGS OF FACT .....................................................1320
 A. Undisputed Facts ...............................................1320
 B. Disputed Facts .................................................1321

IV. LEGAL ANALYSIS .......................................................1321
 A. The Rehabilitation Act Claim ...................................1321
 1. Exhaustion Of Administrative Remedies .....................1323
 2. Consideration Of Claims Not Raised In An EEO Complaint ....1324
 B. The Title VII Retaliation Claim ................................1328

V. CONCLUSION ...........................................................1330

In this employment discrimination litigation, plaintiff claims that he was constructively discharged from his position as a county executive director for the Agricultural Stabilization and Conservation Service (ASCS) in retaliation for making claims of sexual harassment to United States Department of Agriculture Equal Employment Opportunity investigators in violation of 42 U.S.C. § 2000e–3 and that he was constructively discharged for a mental disability in violation of § 501 of the Rehabilitation Act of 1973 (hereinafter the Rehabilitation Act), 29 U.S.C. § 791. The defendant Secretary of Agriculture has moved for summary judg-ment first on the ground that there is no genuine issue of material fact that ASCS took no actions in reprisal or retaliation for activities of the plaintiff protected under Title VII. The Secretary of Agriculture has also moved for summary judgment on the ground that plaintiff has not exhausted administrative remedies on his claim under the Rehabilitation Act and cannot, in any event, establish a claim of disability under that act.

## I. PROCEDURAL BACKGROUND

Plaintiff G. Dean Hargens (Hargens), the former county executive director of the Har-

din County, Iowa, office of the Agricultural Stabilization and Conservation Service (ASCS), filed his complaint in this action on September 15, 1992. Hargens's complaint alleged sexual harassment in the form of retaliation for filing sexual harassment claims with his superiors and the Equal Employment Opportunity (EEO) officer of the United States Department of Agriculture (USDA) in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, a claim of discharge for a mental disability in violation of § 501 of the Rehabilitation Act, 29 U.S.C. § 791, a claim of violation of 5 U.S.C. § 2302(b)(8), commonly known as a "whistleblower" protection provision, and claims of contractual interference, libel, slander, and invasion of privacy. Defendants were USDA Secretary Edward Madigan (for whom Secretary Mike Espy was subsequently substituted); the Hardin County, Iowa, ASCS; the Iowa State ASCS; and Hardin County ASCS County Committee Members Craig A. Olthoff, Harold Lloyd, Douglas Munson, and Leland Coburn. Defendants moved to extend time to answer, and then on December 16, 1992, moved to dismiss the complaint. While that motion was pending, on June 9, 1993, Hargens filed an amended complaint.

On October 4, 1993, Hon. Donald E. O'Brien, Senior Judge, entered an order dismissing the claims of contractual interference, libel, slander, invasion of privacy, and the whistle-blower claim under 5 U.S.C. § 2302(b)(8), and dismissing all defendants except Secretary of Agriculture Mike Espy. Thus, the only claims remaining are the Title VII claim of retaliation and the Rehabilitation Act claim under 29 U.S.C. § 791. Espy has moved for summary judgment on these remaining claims.

## II. STANDARDS FOR SUMMARY JUDGMENT

■ The Eighth Circuit recognizes "that summary judgment is a drastic remedy and must be exercised with extreme care to prevent taking genuine issues of fact away from juries." *Wabun–Inini v. Sessions*, 900 F.2d

1234, 1238 (8th Cir.1990). On the other hand, the Federal Rules of Civil Procedure have authorized for nearly 60 years "motions for summary judgment upon proper showings of the lack of a genuine, triable issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Thus, "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Wabun–Inini*, 900 F.2d at 1238 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986)); *Hartnagel v. Norman*, 953 F.2d 394, 396 (8th Cir.1992).

■ The standard for granting summary judgment is well established. *Rule 56* of the Federal Rules of Civil Procedure states in pertinent part:

Rule 56. Summary Judgment

(b) For Defending Party. A party against whom a claim ... is asserted ... may, at any time, move for summary judgment in the party's favor as to all or any part thereof.

(c) Motions and Proceedings Thereon.... *The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.*

*Fed.R.Civ.P.* 56(b) & (c) (emphasis added); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Munz v. Michael*, 28 F.3d 795, 798 (8th Cir.1994); *Roth v. U.S.S. Great Lakes Fleet, Inc.*, 25 F.3d 707, 708 (8th Cir. 1994); *Cole v. Bone*, 993 F.2d 1328, 1331 (8th Cir.1993); *Woodsmith Publishing Co. v. Meredith Corp.*, 904 F.2d 1244, 1247 (8th Cir.1990); *Wabun–Inini*, 900 F.2d at 1238 (citing *Fed.R.Civ.P.* 56(c)).[1] A court consid-

---

1. An issue of material fact is genuine if it has a real basis in the record. *Hartnagel v. Norman*, 953 F.2d 394 (8th Cir.1992) (citing *Matsushita*

*Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986)). "Only disputes over facts

ering a motion for summary judgment must view all the facts in the light most favorable to the nonmoving party, here Hargens, and give Hargens the benefit of all reasonable inferences that can be drawn from the facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)); *Munz v. Michael,* 28 F.3d 795, 796 (8th Cir.1994); *Allison v. Flexway Trucking, Inc.,* 28 F.3d 64, 66 (8th Cir.1994); *Johnson v. Group Health Plan, Inc.,* 994 F.2d 543, 545 (8th Cir.1993); *Burk v. Beene,* 948 F.2d 489, 492 (8th Cir.1991); *Coday v. City of Springfield,* 939 F.2d 666, 667 (8th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1170, 117 L.Ed.2d 416 (1992).

■ Procedurally, the moving party, here Espy, bears "the initial responsibility of informing the district court of the basis for [his] motion and identifying those portions of the record which show lack of a genuine issue." *Hartnagel,* 953 F.2d at 395 (citing *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552); *see also Reed v. Woodruff County, Ark.,* 7 F.3d 808, 810 (8th Cir.1993). Espy is not required by *Rule* 56 to support his motion with affidavits or other similar materials negating the opponent's claim. *Id.*

■ "When a moving party has carried its burden under *Rule* 56(c), its opponent must do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1355. Hargens is required under Rule 56(e) to go beyond the pleadings, and by affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." *Fed.R.Civ.P.* 56(e); *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553. Although "direct proof is not required to create a jury question, . . . to avoid summary judgment, 'the facts and circumstances relied upon must attain the dignity of substantial evidence and must not be such as merely to create a suspicion.'" *Metge v.*

*Baehler,* 762 F.2d 621, 625 (8th Cir.1985) (quoting *Impro Products, Inc. v. Herrick,* 715 F.2d 1267, 1272 (8th Cir.1983), *cert. denied,* 465 U.S. 1026, 104 S.Ct. 1282, 79 L.Ed.2d 686 (1984)), *cert. denied,* 474 U.S. 1057, 106 S.Ct. 798, 88 L.Ed.2d 774 (1986). The necessary proof that the nonmoving party must produce is not precisely measurable, but the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Allison v. Flexway Trucking, Inc.,* 28 F.3d 64, 66 (8th Cir. 1994).

■ In *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510, *Celotex,* 477 U.S. at 323–24, 106 S.Ct. at 2552–53, and *Matsushita,* 475 U.S. at 586–87, 106 S.Ct. at 1355–56, the Supreme Court established that a summary judgment motion should be interpreted by the trial court to accomplish its purpose of disposing of factually unsupported claims, and the trial judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. *Johnson v. Enron Corp.,* 906 F.2d 1234, 1237 (8th Cir.1990). The trial court, therefore, must "assess the adequacy of the nonmovants' response and whether that showing, on admissible evidence, would be sufficient to carry the burden of proof at trial." *Hartnagel,* 953 F.2d at 396 (citing *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552). If Hargens fails to make a sufficient showing of an essential element of a claim with respect to which he has the burden of proof, then Espy is "entitled to judgment as a matter of law." *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552; *Woodsmith,* 904 F.2d at 1247. However, if the court can conclude that a reasonable trier of fact could return a verdict for the nonmovant, then summary judgment should not be granted. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; *Burk,* 948 F.2d at 492; *Woodsmith,* 904 F.2d at 1247. With these standards in mind, the court turns to consideration of Espy's motion for summary judgment.

that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liber-*

*ty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Hartnagel,* 953 F.2d at 394.

## III. FINDINGS OF FACT

### A. Undisputed Facts

■ The record reveals that the following facts are undisputed. The ASCS is a division of the USDA, and it administers various USDA programs, including price support, conservation, and loan programs. Pursuant to statute, the Secretary of Agriculture establishes state and local committees and appoints the members of the state committees. The members of the county committees, however, are elected by farmers in the county. The county committee employs and supervises a county executive director who is responsible for the day-to-day operations of the county office and executes the policies established by the county committee. The parties have stipulated that the county executive director is not a federal employee for purposes of Civil Service or *"Bivens"* actions,[2] but could be considered an employee for Title VII purposes because of the breadth of the definition of "employee" under that act.[3] Hargens was the county executive director of the Hardin County ASCS. His employment in that position began with a probation period from April 22, 1990, until October of 1990, and terminated on June 21, 1991.

On March 21, 1991, Hargens was notified by the Hardin County Committee that he was suspended from his position pending an investigation by the USDA's Human Resources Management Division (HRMD) in Washington, D.C. The HRMD was to investigate allegations against Hargens of sexual harassment of his employees and examine his overall conduct of the Hardin County ASCS office. Hargens's suspension was lifted on April 24, 1991, following consideration by the county committee of the HRMD report and Hargens's responses. The county committee reinstated Hargens effective April 29, 1991, but gave him a retroactive fourteen-day disciplinary suspension without pay for the period March 24 to April 6, 1991. The county committee also placed Hargens on a ninety-day "performance improvement period" or "PIP" program that involved monitoring several aspects of his conduct and job performance.

On May 18, 1991, Hargens sought treatment for stress from Dr. James Trahan of Ames, Iowa. Dr. Trahan saw Hargens again on June 13, 1991. Dr. Trahan sent two letters to ASCS. The first, dated May 23, 1991, informed ASCS that Dr. Trahan was writing to the ASCS "regarding [Hargens's] medical condition." Defendant's Exhibit 2. The letter continued that "[i]n my opinion he is unable to return to work duties before the date of June 5, 1991. He will be continuing in my care through that time and should we need to extend that time or I feel he can return sooner, you will be notified." *Id.* Dr. Trahan wrote to the ASCS again on May 30, 1991. This second letter stated that

> Mr. Dean Hargens ... is continuing under my care. In my opinion, he will not be capable of returning to work by the estimated June 5 date. I feel that an additional two weeks is likely to be necessary before he would be capable of returning to full-time or part-time work duties.

Defendant's Exhibit 3. Hargens worked at most seven of the first thirty days of his PIP program. On May 23, 1991, Hargens also sought EEO counseling from an EEO counselor. Virginia Vernon was assigned to con-

---

**2.** In *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,* 403 U.S. 388, 397, 91 S.Ct. 1999, 2005, 29 L.Ed.2d 619 (1971), the United States Supreme Court authorized a direct cause of action for damages against federal officials based upon a deprivation of constitutional rights. *See also Fuller v. Secretary of Defense of the United States,* 30 F.3d 86, 88 (8th Cir.1994); *Krueger v. Lyng,* 927 F.2d 1050, 1053 (8th Cir. 1991). A *"Bivens"* action is sometimes referred to as a federal law analogue to an action under 42 U.S.C. § 1983. *Vennes v. An Unknown Number of Unidentified Agents of the United States,* 26 F.3d 1448, 1452 (8th Cir.1994). In *Bivens,* the Court specified two exceptions to the availability of a direct cause of action for damages: where

Congress has provided an alternative remedy, or where there are "special factors counselling hesitation in the absence of affirmative action by Congress." *Krueger,* 927 F.2d at 1053 (citing *Bivens,* 403 U.S. at 396–97, 91 S.Ct. at 2004–05).

**3.** Plaintiff, as a county executive director, was not a "federal employee." *Krueger v. Lyng,* 927 F.2d 1050, 1054 (8th Cir.1991); *Hedman v. Department of Agriculture,* 915 F.2d 1552 (Fed.Cir. 1990). However, Espy concedes that plaintiff would be considered an "employee" under the civil rights laws including Title VII of the Civil Rights Act. *Spirides v. Reinhardt,* 613 F.2d 826, 830–32 (D.C.Cir.1979).

sider Hargens's informal complaint of sex discrimination.

On May 31, 1991, at the conclusion of the first thirty days of the PIP review period, the county committee notified Hargens that it believed he had made no significant progress and advised him that he would receive another report in approximately thirty days. However, on June 19, 1991, before a second review was made and before Hargens returned to work, Hargens resigned effective June 21, 1991.

Hargens filed a formal EEO Complaint of Employment Discrimination with the USDA on November 11, 1991, alleging that he was subjected to sexual harassment by the failure of the ASCS to support him in his efforts to stop activities he alleges were sexually harassing or unprofessional. EEO Complaint, Defendant's Exhibit 1.[4] His EEO complaint also alleges reprisal, but the box indicating "handicap" as a basis of discrimination is not marked. *Id.* Hargens attached to his EEO complaint, *inter alia,* copies of Dr. Trahan's medical reports. *Id.* Hargens's formal complaint was accepted for investigation on January 12, 1992. USDA Report of Investigation, Plaintiff's Exhibit 1, p. 3.

Hargens also filed suit in this court on September 15, 1992. Hargens's EEO complaint was dismissed by the Secretary of Agriculture on November 25, 1992, pursuant to regulations of the EEOC, 29 C.F.R. 1614.107(c), providing that the head of the Agency or his designee shall dismiss those allegations in a complaint that are the basis of a pending civil action in a U.S. District Court in which the complainant is a party. USDA Final Decision Letter, Plaintiff's Exhibit 30. Nonetheless, the USDA produced a Report of Investigation of Hargens's complaint on January 8, 1993. USDA Report of Investigation, Plaintiff's Exhibit 1. That Report of Investigation identifies Hargens's complaints in the November 12, 1991, formal complaint of discrimination as

> because of third party sexual harassment and reprisal for EEO activity, he received a 14 day suspension effective March 21,

1991; was placed on a 90 day performance improvement; hostile working conditions; and was coerced into resignation.

*Id.* at p. 3. Nowhere does the report indicate that any claim of discrimination on the basis of a handicap was raised or investigated.

### B. Disputed Facts

Hargens asserts that there is a genuine issue of material fact as to a number of matters precluding summary judgment on either of his remaining claims. Hargens asserts that he made a series of attempts to eliminate conduct from the Hardin County ASCS office which he believed to be sexually harassing and unprofessional. The court need not detail the circumstances of which Hargens complained. Hargens asserts that he made complaints about these circumstances to various members of the Hardin County Committee, but that he did not receive any support from them in eliminating the problems. Hargens asserts that instead of addressing the problems he had identified in the Hardin County ASCS office, his supervisors instead embarked on a campaign to develop evidence that Hargens had been the perpetrator of sexual harassment and had performed his job duties inadequately. He also asserts that written statements he made to EEO and HRMD investigators got into the hands of his immediate supervisors, causing his supervisors to become very upset, and resulting in his constructive discharge. Finally, Hargens asserts that no reasonable efforts were made to accommodate his mental disability during his PIP period.

### IV. LEGAL ANALYSIS

### A. The Rehabilitation Act Claim

■ In 1978, the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.,* was amended to provide private causes of action to persons subjected to handicap discrimination by the federal government and its agencies. *Gardner v. Morris,* 752 F.2d 1271, 1277 (8th Cir. 1985) (citing *Prewitt v. United States Postal*

---

4. Hargens's formal EEO Complaint refers to a letter he wrote to Virginia Vernon on August 27, 1991, in which he "expressed my views on this as of that date." EEO Complaint, Defendant's Exhibit 1. However, that letter is not among the exhibits submitted to the court by either party.

*Service,* 662 F.2d 292, 302 (5th Cir.1981)); *see also Judd v. Billington,* 863 F.2d 103, 105 (D.C.Cir.1988); *Boyd v. United States Postal Service,* 752 F.2d 410, 412 (9th Cir.1985). The amendments were as follows:

> First, the 1978 amendment to § 504, 29 U.S.C. § 794, extended the Act's prohibition against handicap employment discrimination to include the employment activities of the federal government.... Section 501(b), 29 U.S.C. § 791(b), requires the federal government as an employer to develop and implement affirmative action plans on behalf of handicapped employees.

*Id.* Hargens's complaint asserts a claim under § 501 of the act, 29 U.S.C. § 791, alleging that the ASCS made no effort to accommodate his mental disability and in fact discharged him in part because of that disability.[5]

■■■■■ In order to state a claim under § 501 of the act, Hargens must show that (1) he is a handicapped person under the act; (2) he is "otherwise qualified" for the position; (3) he was excluded from that position solely because of his handicap; and (4) that his employer was a federal agency or that the program sponsoring the position received federal funding. *Guice–Mills v. Derwinski,* 967 F.2d 794, 797 (2d Cir.1992); *Joyner by Lowry v. Dumpson,* 712 F.2d 770, 774 (2d Cir.1983); *See also Overton v. Reilly,* 977 F.2d 1190, 1193 (7th Cir.1992) (claimant must be "a qualified handicapped person" as defined in the act, citing 29 C.F.R. § 1613.703 (1991), and *Langon v. Dept. of Health and Human Services,* 959 F.2d 1053, 1057 (D.C.Cir.1992)). Under the act, an "individual with a disability" means any person who (i) has a physical or mental impairment which substantially limits one or more of such person's major life activities, (ii) has a record of such an impairment, or (iii) is regarded as having such an impairment. 29 U.S.C. § 706(8)(B); 29 C.F.R. § 1613.702(a); *Maulding v. Sullivan,* 961 F.2d 694, 698 (8th Cir.1992). "Major life activities" are defined as "functions, such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1613.702(c). A "qualified handicapped person" is defined by EEOC policies for section 501, 29 U.S.C. § 791(b), as one who "with or without reasonable accommodation, can perform the essential functions of the position in question." *Overton,* 977 F.2d at 1193 (citing 29 C.F.R. § 1613.702(f) (1991)); *Guice–Mills,* 967 F.2d at 797. "Reasonable accommodation" is defined as

> includ[ing], but shall not be limited to: (1) Making facilities readily accessible ... and (2) job restructuring, part-time or modified work schedules, acquisition or modification of equipment or devices, appropriate adjustment or modification of examinations, the provision of readers and interpreters, and other similar actions.

29 C.F.R. § 1613.704(b) (1991); *Overton,* 977 F.2d at 1193–94; *Guice–Mills,* 967 F.2d at 797. These possible means of accommodation, however, are to be balanced against considerations of "undue hardship" to the agency. 29 C.F.R. § 1613.704(a) & (c) (1991); *Overton,* 977 F.2d at 1194; *Guice–Mills,* 967 F.2d at 797. In sum, the ultimate question in an action against a federal em-

---

5. There is a split in authority among the circuits as to whether or not § 501 is the exclusive remedy for a federal employee claiming handicap discrimination under the Rehabilitation Act or if such an employee may also mount a claim under § 504. *Overton v. Reilly,* 977 F.2d 1190, 1193 (7th Cir.1992) (identifying the split in authority, but finding it unnecessary to decide the issue in the case before it). Several courts have expressed doubt that § 504 applies to employment discrimination suits against federal agencies, or have held that § 501 is the exclusive remedy for federal employees. *See, e.g., Johnson v. United States Postal Service,* 861 F.2d 1475, 1477 (10th Cir.1988), *cert. denied,* 493 U.S. 811, 110 S.Ct. 54, 107 L.Ed.2d 23 (1989); *McGuinness v. Unit-* *ed States Postal Service,* 744 F.2d 1318, 1321–22 (7th Cir.1984); *Boyd v. United States Postal Service,* 752 F.2d 410, 413 (9th Cir.1985) (§ 501 is exclusive remedy for federal employees). Other circuits, however, have held that § 504 does apply. *See, e.g., Ristoff v. United States,* 839 F.2d 1242, 1243–44 (7th Cir.1988) (assuming without discussion that plaintiff may sue federal employer under § 504); *Smith v. United States Postal Service,* 742 F.2d 257, 260 (6th Cir.1984); *Treadwell v. Alexander,* 707 F.2d 473, 475 (11th Cir. 1983); *Prewitt v. United States Postal Service,* 662 F.2d 292, 302–04 (5th Cir.1981) (discussing legislative history). This court need not decide the issue, because Hargens has brought only a claim under § 501.

ployer under § 501 of the Rehabilitation Act, 29 U.S.C. § 791, is

whether, with reasonable accommodation, a handicapped person "who meets all employment criteria except for the challenged discriminatory criterion 'can perform the essential functions of the position in question without endangering the health and safety of the individual or others.'" *Prewitt [v. United States Postal Service]*, 662 F.2d [292,] 310 [ (5th Cir.1981) ], *citing* 29 C.F.R. § 1613.702(f) (1984).

*Gardner v. Morris*, 752 F.2d 1271, 1281 (8th Cir.1985). Espy argues that Hargens failed to exhaust EEO administrative remedies of the USDA on his handicap claim under 29 U.S.C. § 791, and that Hargens cannot demonstrate that he is a handicapped person under the Rehabilitation Act.

### 1. Exhaustion Of Administrative Remedies

Espy argues that although Hargens filed an EEO complaint with the USDA, his complaint did not identify his alleged handicap as a basis of discrimination. Instead, Espy argues, the EEO complaint alleged discrimination on the basis of sexual harassment and reprisal. Further, Espy argues, Hargens has testified in deposition that he did not or did not recall ever raising his handicap as a basis for discrimination with any EEO or HRMD investigator. Hargens counters that Espy is arguing that he didn't exhaust administrative remedies simply because he did not check the box marked "handicap" on the EEO complaint. Hargens argues that the medical records he submitted with his EEO complaint put Espy and the EEO investigators on notice of his claim of discrimination on the basis of disability. Hargens argues that at the very least there is a genuine issue of material fact as to what he submitted to EEO investigators.

The 1978 amendments to the Rehabilitation Act also incorporated by reference the provisions of § 717 of Title VII, 42 U.S.C. § 2000e–16, as the exclusive vehicle for judicial remedy of claims of discrimination in federal employment. *Vinieratos v. United States Dept. of Air Force*, 939 F.2d

762, 773 (9th Cir.1991); *Judd*, 863 F.2d at 105; *Boyd*, 752 F.2d at 412; *Gardner*, 752 F.2d at 1278. Section 2000e–16 requires that the claimant exhaust administrative remedies before filing a § 2000e–16 discrimination claim in court. *Vinieratos*, 939 F.2d at 773; *Judd*, 863 F.2d at 105; *Boyd*, 752 F.2d at 412; *Gardner*, 752 F.2d at 1278. Under Title VII, "[c]ompliance with the administrative review apparatus provided by Title VII is a requisite for judicial review of a discrimination claim." *Gardner*, 752 F.2d at 1278 (quoting *Ray v. Freeman*, 626 F.2d 439, 442 (5th Cir.1980), *cert. denied*, 450 U.S. 997, 101 S.Ct. 1701, 68 L.Ed.2d 198 (1981)). The Eighth Circuit Court of Appeals has therefore held that a plaintiff suing under the Rehabilitation Act must exhaust administrative remedies, *Frye v. Aspin*, 997 F.2d 426, 428 (8th Cir.1993) (citing *Gardner*); *Gardner*, 752 F.2d at 1278, and other courts concur. *Vinieratos*, 939 F.2d at 767–68, 773 (Title VII requires federal employee to exhaust administrative remedies as a precondition to suit on claims under Title VII or the Rehabilitation Act); *Judd*, 863 F.2d at 105 ("Rather than construct a new remedial scheme tailored to the Rehabilitation Act, Congress incorporated the comprehensive scheme provided in Title VII ... by making the 'remedies, procedures, and rights set forth in ... 42 U.S.C. § 2000e–16' available to employees unhappy with the disposition of their Rehabilitation Act complaints."); *Boyd*, 752 F.2d at 412 ("One effect of this incorporation [of Title VII remedies] was that the requirement of exhaustion of administrative remedies applicable to federal employees under Title VII ... was imported into claims brought under section 501"); *Martin v. United States Post Office*, 752 F.Supp. 213, 217 (N.D.Tex.1990) (dismissing without prejudice unexhausted claims under 29 U.S.C. § 791); *DiPompo v. West Point Military Academy*, 708 F.Supp. 540, 544–45 (S.D.N.Y.1989) (§ 501 of Rehabilitation Act requires exhaustion of administrative remedies under Title VII); *Williams v. Casey*, 657 F.Supp. 921, 923 (S.D.N.Y.1987) ("Title VII and the Rehabilitation Act share the same administrative exhaustion procedures.").[6]

---

6. Although this court has found no dissent from the conclusion that claims under 29 U.S.C. § 791

■ The exhaustion of remedies requirement serves the purpose of

"giv[ing] the agency the information it needs to investigate and resolve the dispute between the employee and the employer. Good faith effort by the employee to cooperate with the agency and the EEOC and to provide all relevant, available information is all that exhaustion requires." *Wade v. Secretary of Army*, 796 F.2d 1369, 1377 (11th Cir.1986). Conversely, when a complainant refuses or fails to provide the agency information sufficient to evaluate the merits of the claim, he or she "cannot be deemed to have exhausted administrative remedies." *Id.* at 1376; *see also Pack v. Marsh*, 986 F.2d 1155, 1157 (7th Cir.1993); *Edwards v. Department of the Army*, 708 F.2d 1344, 1347 (8th Cir.1983).

*Khader v. Aspin*, 1 F.3d 968, 971 (10th Cir. 1993). *See also Butts v. City of N.Y. Dept. of Housing*, 990 F.2d 1397, 1401 (2d Cir.1993) (the "exhaustion requirement is an essential element of Title VII's statutory scheme.... '[T]he purpose of the notice provision, which is to encourage settlement of discrimination disputes through conciliation and voluntary compliance, would be defeated if a complainant could litigate a claim not previously presented to and investigated by the EEOC,'" quoting *Miller v. Int'l Tel. & Tel.*, 755 F.2d 20, 26 (2d Cir.), *cert. denied*, 474 U.S. 851, 106 S.Ct. 148, 88 L.Ed.2d 122 (1985)).

EEOC regulations require federal agencies to provide for the processing of discrimination claims. 29 C.F.R. § 1613.708; *Morgan v. United States Postal Service*, 798 F.2d

1162, 1165–66 (8th Cir.1986), *cert. denied*, 480 U.S. 948, 107 S.Ct. 1608, 94 L.Ed.2d 794 (1987). The record shows that Hargens was aware of the USDA's procedures and availed himself of both the informal and formal EEO administrative procedures of the USDA. The record also shows that Hargens did not explicitly raise his Rehabilitation Act claim in those administrative procedures. The question then becomes whether this court may nonetheless entertain Hargens's Rehabilitation Act claim.

### 2. Consideration Of Claims Not Raised In An EEO Complaint

In considering whether a plaintiff under the Rehabilitation Act has exhausted his administrative remedies for a claim not explicitly appearing in his EEO complaint, courts have applied the standard for determining whether EEOC procedures have been exhausted on Title VII claims. *See, e.g., Haithcock v. Frank*, 958 F.2d 671, 675–76 (6th Cir.1992) (concluding that "the administrative complaint should be liberally construed to encompass all charges 'reasonably expected to grow out of the charge of discrimination,'" in case considering whether continuing violation of racial and handicap discrimination could be entertained by the court, and concluding that the continuing violation claim was within the scope of the EEO complaint or could reasonably be expected to grow therefrom); *Rennie v. Garrett*, 896 F.2d 1057, 1062 (7th Cir.1990) ("the district court must consider the position taken by several courts ... that a complaint ... which is reasonably related to or arises out of an already filed discrimination complaint does

(§ 501 of the Act) must be exhausted using Title VII procedures, courts have been less uniform in their conclusions as to whether or not claims under 29 U.S.C. § 794 (§ 504 of the Act) require such exhaustion of administrative remedies. *See, e.g., Morgan v. United States Postal Service*, 798 F.2d 1162, 1164–65 (8th Cir.1986), *cert. denied*, 480 U.S. 948, 107 S.Ct. 1608, 94 L.Ed.2d 794 (1987) (noting that § 504 of the Rehabilitation Act does not explicitly require exhaustion of administrative remedies, but concluding that Congress intended remedies and procedures under § 501 and § 504 to be the same); *Boyd*, 752 F.2d at 413 (same); *McGuinness v. United States Postal Service*, 744 F.2d 1318, 1321 (7th Cir.1984) (same); *but see Oliver v. United States Army*, 758 F.Supp. 484, 486 (E.D.Ark.1990) (noting that

other courts, including the Eighth Circuit Court of Appeals in *Morgan*, had found exhaustion was required under § 504, but requesting that the parties brief the issue further); *Rothschild v. Grottenthaler*, 716 F.Supp. 796, 801 (S.D.N.Y. 1989) ("[w]e think it clear that section 504 of the Rehabilitation Act does not require first resort to administrative remedies. Consequently, this action will not be dismissed for failure to exhaust administrative remedies."), *aff'd in part and vacated in part, remanded, Rothschild v. Grottenthaler*, 907 F.2d 286 (2d Cir.1990) (although this part of the ruling was not considered on appeal). This court need not address the split of authority as Hargens has brought his claim of disability discrimination only pursuant to § 501 of the Act, 29 U.S.C. § 791.

not need to be separately presented to the EEO counselor."). In light of the liberal interpretation of administrative complaints in aid of the remedial purposes of anti-discrimination legislation, the Eighth Circuit Court of Appeals has stated that in Title VII cases, "[w]e ... deem administrative remedies exhausted as to all incidents of discrimination that are 'like or reasonably related to the allegations of the [administrative] charge.'" *Tart v. Hill Behan Lumber Co.*, 31 F.3d 668, 671 (8th Cir.1994) (quoting *Anderson v. Block*, 807 F.2d 145, 148 (8th Cir.1986)); *Williams v. Little Rock Mun. Water Works*, 21 F.3d 218, 222 (8th Cir.1994) ("like or reasonably related" claims exhausted, also citing *Anderson*). However, the Ninth Circuit Court of Appeals, in circumstances where the plaintiff had abandoned then attempted to return to the EEO procedures, rejected the suggestion that

> federal jurisdiction lies when the administrative process fails to help a complainant and 'the only body that is left to straighten out the mess is the federal judiciary.' [Citation omitted] Where, as here, the complainant has only himself to blame for the absence of an administrative ruling on the merits of his claim, it is fair to conclude that he has failed to comply with the administrative exhaustion requirement. It is not the role of the federal judiciary to straighten out a mess that is the complainant's own doing.

*Vinieratos*, 939 F.2d at 773. The court will therefore examine the standards for deciding what claims are like or reasonably related to an EEO complaint, and which are not as the result of a mess of the complainant's own making.

Although it is not entirely settled whether failure to file an EEOC complaint and exhaust administrative remedies is a jurisdictional bar or only a precondition to suit in federal court, *compare, e.g., Albano v. Schering–Plough Corp.*, 912 F.2d 384, 387 (9th Cir.1990) (holding that it was "well-settled" that failure to file an EEOC charge is not jurisdictional but is merely a condition precedent to suit), *cert. denied*, 498 U.S. 1085, 111 S.Ct. 959, 112 L.Ed.2d 1046 (1991), *with Johnson v. Orr*, 747 F.2d 1352, 1356 (10th

Cir.1984) (holding that failure to exhaust administrative remedies was a "jurisdictional prerequisite" to suit), *and see also Vinieratos*, 939 F.2d at 768 n. 5 (discussing the split in authority), courts are more consistent in concluding that equitable considerations may generally apply to excuse a claimant's failure to amend the claimant's EEOC charge to include a particular claim. *Albano v. Schering–Plough Corp.*, 912 F.2d 384, 387 (9th Cir.1990), *cert. denied*, 498 U.S. 1085, 111 S.Ct. 959, 112 L.Ed.2d 1046 (1991).

▆ The fact that a complainant failed to mark the appropriate box on an EEO complaint does not preclude the court from considering a claim in a subsequent lawsuit on the ground that it has not been exhausted in administrative proceedings, because such a conclusion would not be a liberal construction of the complaint and would not consider whether the claim can be "reasonably expected to. grow out of the charge of discrimination." *Haithcock v. Frank*, 958 F.2d 671, 675–76 (6th Cir.1992). In determining whether a plaintiff has properly raised his charges at the administrative level so as to permit subsequent federal court jurisdiction,

> the courts are guided by the principle that charges of discrimination, which are filed by law complainants, should not "result in the restriction of subsequent complaints based on procedural technicalities or the failure of the charges to contain the exact wording which might be required in a judicial pleading."

*Id.* at 675 (quoting *EEOC v. McCall Printing Corp.*, 633 F.2d 1232, 1235 (6th Cir.1980), and *Tipler v. E.I. DuPont de Nemours & Co.*, 443 F.2d 125, 131 (6th Cir.1971)). Nonetheless, where a plaintiff failed to check the box for race discrimination and specifically and unambiguously charged only retaliation for filing an EEOC charge in 1987 in her 1990 EEOC charge and supporting affidavit, the court concluded that the claim of discrimination was not reasonably within the scope of the EEO complaint. *Williams v. Little Rock Mun. Water Works*, 21 F.3d 218, 223 (8th Cir.1994). The court reasoned that:

> [t]he 1990 EEOC charge does not even hint of a claim of race discrimination. This amounts to more than a mere technicality

and is the product of an unconstrained reading of Williams' charge. The only claim properly addressed by EEOC administrative processes was that of retaliation. Therefore, we hold that the district court did not err in granting Water Works' motion for summary judgment as to Williams' Title VII race discrimination claims. *Id.* It was therefore not the technical failure to mark the right box in *Williams* that alone precluded judicial consideration of the claim, but the complainant's specific and unambiguous charge only of certain forms of discrimination, not even hinting at another claim, that precluded judicial consideration of another claim. *Id.*

 Just as failure to mark the right box on the EEO complaint alone will not preclude subsequent judicial consideration of a claim, failure of the EEO investigator to investigate a claim not explicitly raised will also not preclude judicial consideration of the claim. *Clark v. Kraft Foods, Inc.,* 18 F.3d 1278, 1280 (5th Cir.1994); *Albano,* 912 F.2d at 387. Where the plaintiff's statements to the EEOC presented a sufficient predicate upon which one reasonably would expect the agency to investigate a claim even if not raised in the complaint and not actually investigated, the claim is not barred from judicial consideration. *Id.* The court in *Clark* was persuaded that the plaintiff's statements were sufficient "at least to raise inferences supporting Clark's claim of gender-based harassment" even though her actual claim had not been for disparate treatment based on sex. *Id.* Although the actual scope of an EEOC investigation does not determine whether a claim is exhausted, investigation of a particular claim creates a strong inference that such a claim was presented. *Id.; see also Waiters v. Parsons,* 729 F.2d 233, 237 (3d Cir.1984) ("The relevant test is whether the acts alleged in the subsequent Title VII suit are fairly within the scope of the prior EEOC complaint, or the investigation arising therefrom.").

 Finally, the EEOC's failure to consider a claim by refusing to amend the complaint to include it will not bar judicial consideration of the claim. *Albano,* 912 F.2d at 387–88. In *Albano,* the court was further persuaded to consider the claim because, in addition to denying the plaintiff leave to amend his complaint to reflect specific additional claims, the EEOC had assured the plaintiff that his original complaint encompassed the additional claims. *Id.* The court rejected the employer's argument that it had not been adequately notified of the additional claims brought in federal court because they had not appeared in the EEOC complaint. *Id.* at 387–88. The court reasoned that

> [w]e view the EEOC charge primarily as an impetus to EEOC investigation and conciliation, not as a pleading giving notice to the employer. [Citations omitted.] Further, even recognizing the role of the EEOC charge in placing an employer on notice of the claims against it, the claimant is not responsible for the absence of notice in these circumstances. It is the EEOC, not the claimant, who is responsible for notifying the employer of the claims alleged in the EEOC charge. [Citations omitted.] Thus, the claimant should not be penalized because of the EEOC's own errors [in refusing to amend the complaint to reflect the charges].

*Id.* at 388.

In the specific circumstances presented here, when the court must consider whether or not a Rehabilitation Act claim could be considered even though not explicitly raised in an EEO complaint, courts have applied the same test as is used to consider whether a Title VII claim is reasonably related to an EEOC complaint actually made:

> A claim of discrimination is reasonably related to an EEO charge if: a) a plaintiff presents it to the EEO office; or b) the EEO office investigates the claim; or c) the EEO office's investigation of the original charge reasonably could be expected to encompass the claim. *Almendral v. New York State Office of Mental Health,* 743 F.2d 963, 967 (2d Cir.1984); *Smith v. American President Lines, Ltd.,* 571 F.2d 102, 107 n. 10 (2d Cir.1978) (citing cases); *Grant v. Morgan Guaranty Trust Co. of N.Y.,* 548 F.Supp. 1189, 1191 (S.D.N.Y. 1982). Put differently, if the initial EEO charge did not apprise the defendant that the claim in question would be subject to

the EEO office's inquiry, then that claim is not reasonably related to the EEO charge. *Fitch v. R.J. Reynolds Tobacco,* 678 F.Supp. 1046, 1049 (S.D.N.Y.1987); *see also Stewart v. INS,* 762 F.2d 193, 197–98 (2d Cir.1985); *Kirkland v. Buffalo Bd. of Educ.,* 622 F.2d 1066, 1068 (2d Cir.1980) (*per curiam* ).

*DiPompo,* 708 F.Supp. at 547. In *DiPompo,* the court found that the claim not explicitly made was nonetheless one reasonably within the scope of the EEO charge:

> The facts asserted by DiPompo in his second EEO complaint could have led the EEO officer to investigate DiPompo's claim as a disparate impact claim, because DiPompo complained that the reading test, a neutral rule, operated to discriminate against him because of his dyslexia, a recognized handicap. Therefore, the fact that the EEO officer never considered whether DiPompo could state a claim for disparate impact discrimination does not mean that the claim is barred for failure to exhaust administrative remedies. Accordingly DiPompo's disparate treatment claim will be considered in this proceeding.

*Id.* at 547–48.

██ In the present case, the court finds that Hargens did not, and did not try, to present a handicap claim to the EEO investigators in either his informal or formal complaints. Rather, his complaint specifically focused on sexual harassment and retaliation, without hinting at a claim of discrimination on the basis of disability. The EEO investigators did not investigate any claim of discrimination on the basis of handicap. Thus, Hargens fails to meet two of the three conditions on which this court could still entertain his disability claim.

Finally, the EEO investigators' investigation of the original charge could not reasonably be expected to encompass the handicap discrimination claim. This point is perhaps the most critical in the analysis of the circumstances here. Hargens asserts that his inclusion of his medical records should have put the EEO investigators and the defendant on notice of his disability claim. However, the inclusion of medical records indicating that a person is suffering from stress related to charges of sexual harassment or inadequate job performance is not a sufficient predicate upon which one reasonably would expect the agency to investigate a claim of disability discrimination because it is not sufficient "at least to raise inferences supporting [the complainant's] claim" of disability discrimination. *Clark,* 18 F.3d at 1280. Rather, such medical records and the symptoms or malady they indicate raise an inference only of damages for mental and physical pain and suffering as the result of sexual harassment and retaliation.

The court concludes that in the circumstances presented here Hargens's claim of disability discrimination is not reasonably within the scope of a complaint of sexual harassment and retaliation for yet another reason. There is no common wrong connecting Hargens's disability claim with those Hargens actually presented in his EEO complaint as there may be when additional forms of sexual harassment or race discrimination, such as continuing violations, are urged in a lawsuit even though not raised in the EEO complaint. *See, e.g., Williams,* 21 F.3d at 223 (claims of race discrimination were "separate and distinct from her [original] claims of retaliation" for filing and EEOC complaint, so the race discrimination claims were not within the scope of the original claims); *Clark,* 18 F.3d at 1280 (disparate treatment claim based on gender within the scope of claims of sexual harassment actually presented to the EEOC); *Haithcock,* 958 F.2d at 676 (continuing violation within the scope of complaint of race and disability discrimination claims actually presented); *Waiters,* 729 F.2d at 238 ("core grievance—retaliation—is the same" and part of a pattern of events when plaintiff's EEOC complaint alleged one claim of retaliation, but suit included an additional retaliation approximately thirty months later). In other words, nothing in Hargens's complaint about sexual harassment and retaliation would apprise Espy that the claim of disability discrimination would be subject to the EEO investigators' inquiries or the subject of a later suit. *DiPompo,* 708 F.Supp. at 547. The court concludes that Espy is entitled to summary judgment on Hargens's claim under the Rehabilitation

Act for failure to exhaust administrative remedies.[7]

### B. The Title VII Retaliation Claim

Espy has also moved for summary judgment on Hargens's claim of retaliation on the ground that Hargens cannot make out a *prima facie* showing on such a claim. Specifically, Espy argues that Hargens cannot show that he was engaged in protected activity, that is, opposition to an unlawful employment practice for which he may claim that his employer retaliated against him. Espy argues that none of the matters Hargens allegedly brought to the attention of the EEO and HRMD investigators constituted an unlawful employment practice. Espy also argues that in his deposition Hargens stated that his retaliation claim was not based on his filing of an informal EEO complaint, but rather was based on events that occurred prior to his complaints to the EEO counselor. In his resistance to the motion for summary judgment, however, Hargens argues that his informal complaint to the EEO counselor constituted protected activity for which he cannot be subjected to retaliation. Hargens also asserts that there is a genuine issue of material fact as to what actions he took that might have been protected and what retaliatory actions were taken because of them.

■ Under the sexual discrimination provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–3(a), an employer is forbidden to retaliate against employees for opposing sexual discrimination. *Hazel v. United States Postmaster General*, 7 F.3d 1, 3 (1st Cir.1993); *Archuleta v. Colorado Dept. of Institutions*, 936 F.2d 483, 486 (10th Cir. 1991). That section of Title VII makes it unlawful for an employer to discriminate against an employee because of the employee's opposition to an employment practice made unlawful under Title VII or because of the employee's participation in an investigation, proceeding, or hearing under Title VII. *Archuleta*, 936 F.2d at 486. Some courts have distinguished between the activities protected by the two clauses of 42 U.S.C.

§ 2000e–3(a). *Robinson v. S.E. Pa. Transp. Auth., Red Arrow*, 982 F.2d 892, 896 n. 4 (3d Cir.1993). The "opposition clause" prohibits retaliation because the employee "opposed any practice made an unlawful employment practice by [Title VII]," while the "participation clause" prohibits retaliation because the employee "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." *Id.* (citing *Holden v. Owens–Illinois, Inc.*, 793 F.2d 745, 748–53 (6th Cir.), *cert. denied*, 479 U.S. 1008, 107 S.Ct. 649, 93 L.Ed.2d 704 (1986)). Those courts making a distinction have noted that the "means of opposition have been narrowly construed" to limit Title VII protection in circumstances when the employee's protests interfere with job performance. *Id.* (citing *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1312–13 (6th Cir.1989)). Hargens has brought an "opposition" claim, grounded on his opposition to conduct in the Hardin County ASCS office that he believed was in violation of Title VII. Espy has not argued at this point in the proceedings that Hargens's activities in opposition to sex discrimination interfered with his job performance, relying instead on the position that Hargens was simply not fired in retaliation for any protected activity.

■ To establish a *prima facie* case of retaliation under 42 U.S.C. § 2000e the plaintiff must show (1) that the plaintiff engaged in protected activity; (2) that adverse employment action occurred; and (3) that there is a causal connection between the two. *Sweeney v. City of LaDue*, 25 F.3d 702, 703 (8th Cir.1994); *Sherpell v. Humnoke Sch. Dist. 5 of Lonoke County*, 874 F.2d 536, 540 (8th Cir.1989); *Wentz v. Maryland Cas. Co.*, 869 F.2d 1153, 1154–55 (8th Cir.1989) (same showing for either ADEA or § 2000e); *Jackson v. St. Joseph State Hospital*, 840 F.2d 1387, 1390 (8th Cir.1988), *cert. denied*, 488 U.S. 892, 109 S.Ct. 228, 102 L.Ed.2d 218 (1988); *Womack v. Munson*, 619 F.2d 1292, 1296 (8th Cir.1980), *cert. denied*, 450 U.S.

---

7. Because the court has concluded that Hargens's claim under the Rehabilitation Act is barred by his failure to exhaust administrative remedies as to that claim, the court need not address Espy's second ground for summary judgment on that claim, which is that Hargens cannot establish that he has a handicap within the protection of the act.

979, 101 S.Ct. 1513, 67 L.Ed.2d 814 (1981). The Eighth Circuit Court of Appeals has applied this three-prong *prima facie* showing in a variety of employment retaliation cases. *See, e.g., Schweiss v. Chrysler Motors Corp.,* 987 F.2d 548, 549 (8th Cir.1993) (three-prong *prima facie* showing of retaliation for reporting violations to OSHA); *Rath v. Selection Research, Inc.,* 978 F.2d 1087, 1090 (8th Cir. 1992) (same three-prong showing in ERISA retaliation case); *Valdez v. Mercy Hosp.,* 961 F.2d 1401, 1403 (8th Cir.1992) (same showing in case alleging retaliatory discharge for filing Title VII race discrimination claim); *Tart v. Levi Strauss and Co.,* 864 F.2d 615, 617 (8th Cir.1988) (same showing in case alleging retaliation for filing a sex discrimination claim with the EEOC); *Jackson v. Missouri Pac. R.R. Co.,* 803 F.2d 401, 406–07 (8th Cir.1986) (same showing for retaliation for filing race discrimination claims under § 1981 and § 2000e); *Benson v. Little Rock Hilton Inn,* 742 F.2d 414, 416 (8th Cir.1984) (retaliation claims brought under § 1981 require same three-prong *prima facie* showing as those brought under Title VII); *Womack v. Munson,* 619 F.2d 1292, 1296 (8th Cir. 1980), (same showing in case alleging retaliation for filing a Title VII complaint of race discrimination), *cert. denied,* 450 U.S. 979, 101 S.Ct. 1513, 67 L.Ed.2d 814 (1981).

■ Contrary to Espy's assertion here that Hargens must have opposed conduct that was actually a violation of Title VII, "[t]o prove that he engaged in protected activity, [the plaintiff] need not establish that the conduct he opposed was in fact [discriminatory]." *Manoharan v. Columbia Univ. College of Physicians & Surgeons,* 842 F.2d 590, 593 (2d Cir.1988) (race discrimination under Title VII); *see Davis v. State Univ. [of N.Y.],* 802 F.2d 638, 642 (2d Cir.1986) (age discrimination under Title VII); *Sisco v. J.S. Alberici Constr. Co.,* 655 F.2d 146, 150 (8th Cir.1981) (race discrimination under Title VII), *cert. denied,* 455 U.S. 976, 102 S.Ct. 1485, 71 L.Ed.2d 688 (1982). *Instead, he must demonstrate a good faith, reasonable belief that the underlying challenged action violated the law. Manoharan,* 842 F.2d at 593; *Sisco,* 655 F.2d at 150.

*Wentz,* 869 F.2d at 1155 (emphasis added). *See also Griffiths v. Cigna Corp.,* 988 F.2d 457, 468 (3d Cir.1993) ("To establish that activity is protected under Title VII, a plaintiff need not prove the merits of the underlying discrimination complaint, but only that 'he was acting under a good faith, reasonable belief that a violation existed,'" citing *Sumner v. United States Postal Service,* 899 F.2d 203, 209 (2d Cir.1990)); *Wilson v. UT Health Center,* 973 F.2d 1263, 1267 (5th Cir.1992) (good faith, reasonable charges of violation protected even if charges ultimately shown to be unfounded, citing *De Anda v. St. Joseph Hosp.,* 671 F.2d 850, 853 n. 2 (5th Cir.1982), and *Berg v. La Crosse Cooler Co.,* 612 F.2d 1041, 1045–46 (7th Cir.1980)). Espy's argument that none of the activities Hargens complained of violated § 2000e is therefore insufficient; the question is whether Hargens had a good faith, reasonable belief that the activities constituted discrimination.

■ There is, at minimum, a genuine issue of material fact as to whether or not Hargens had a good faith, reasonable belief that the matters he complained of constituted sexual harassment in violation of the law. There is also a genuine issue of material fact as to whether and towards what conduct by Hargens ASCS officials may have retaliated. Hargens has shown that adverse employment action did occur, as he was suspended, and later either resigned or was constructively discharged. Hargens has therefore shown, or there is a genuine issue of material fact as to, two of the necessary prongs of his retaliation claim.

■ The third prong of the showing, causal connection, may be met, for example, by "proof that the discharge followed the protected activity so closely in time as to justify an inference of retaliatory motive." *Schweiss, supra,* 987 F.2d at 549 (quoting *Rath, supra,* 978 F.2d at 1090; discharge followed report to OSHA by only four days). *See also Rath, supra,* at 1090 (stating standard, but expressing doubt that discharge six months after alleged whistle-blowing met causal connection requirement); *Couty v. Dole,* 886 F.2d 147, 148 (8th Cir.1989) (discharge thirty days after protected activity was sufficient temporal proximity for causal

connection); *Keys v. Lutheran Family and Children's Services of Missouri,* 668 F.2d 356, 358 (8th Cir.1981) (less than two months sufficient proximity for causal connection); *Womack, supra,* 619 F.2d at 1296 (twenty-three days sufficient proximity for causal connection). In each of the cases, however, where temporal proximity was held to be sufficient to establish causal connection, the knowledge of the defendant of the employee's protected activity was not at issue. *See, e.g., Schweiss, supra,* 987 F.2d at 550 (defendant knew of OSHA violation reports, although defendant did not know which individual employee had filed the reports); *Rath, supra,* 978 F.2d at 1090 (employee was fired after receiving reprimand for complaining about proposed changes to ESOP retirement plan); *Couty, supra,* 886 F.2d at 148 (defendants knew of employee's threats to report various safety and quality-control complaints to the Nuclear Regulatory Commission, and employee did file such complaints after he was discharged); *Keys, supra,* 668 F.2d at 357 (defendant did not deny that he knew of employee's filing of EEOC claim or that discharge of· employee was in retaliation for filing EEOC claim); *Womack, supra,* 619 F.2d at 1295 (employee fired after defendant was served with class action discrimination lawsuit initiated by employee). *See also Kimbro v. Atlantic Richfield Co.,* 889 F.2d 869, 881 (9th Cir.1989), *cert. denied,* 498 U.S. 814, 111 S.Ct. 53, 112 L.Ed.2d 28 (1990). In these cases, therefore, the knowledge of the defendant of the employee's protected activities was not a necessary element of the employee's *prima facie* case because knowledge was either already established or conceded.

In the present case, Hargens has demonstrated the temporal proximity between his challenges to conduct he believed to be sexual harassment in his ASCS office and the adverse employment decision. Espy has not denied that the ASCS officials responsible for that employment decision knew of Hargens's complaints, nor could he credibly do so. Hargens has therefore established at least a genuine issue of material fact on the elements of his *prima facie* case of retaliation. The court concludes that Espy is not entitled to summary judgment on Hargens's Title VII retaliation claim.

## V. CONCLUSION

The court concludes that Espy is entitled to summary judgment on Hargens's claim under § 501 of the Rehabilitation Act, 29 U.S.C. § 791, on the ground that Hargens failed to exhaust administrative remedies on that claim. The Rehabilitation Act claim was not like or reasonably related to the charges of discrimination Hargens actually made in his EEO complaint. The court concludes, however, that Espy is not entitled to summary judgment on Hargens's claim of retaliation because the court finds that there is a genuine issue of material fact precluding summary judgment on that issue. This matter will therefore proceed on the remaining retaliation claim.

**IT IS SO ORDERED.**